SETH ABERNATHY and others v. GEORGE L. PHIFER and others, county commissioners.

*Allowance of Claim against County—Confederate Money—Scale.*

1. Allowance of a claim by the board of county commissioners is not conclusive but only *prima facie* evidence of its correctness, and the order making the same may be modified or annulled.

2. In 1860, the clerk and master in equity received a fund belonging to plaintiff distributees, and in 1863 paid the amount to the treasurer of the county (taking his receipt therefor as due the distributees) who expended it for county; *Held*, that the payment in 1863, in the absence of proof to the contrary, is presumed to have been made in confederate currency, and the county is liable for its scale value.

CONTROVERSY submitted without action at Fall Term, 1880, of LINCOLN Superior Court, before *Seymour*, *J.*

The plaintiffs claim that the county of Lincoln is indebted to them as follows:

To Seth Abernathy and wife, Elizabeth, in the sum of $116.06, to James Keeser and wife, Mary, in the sum of $216.06, to Henry Harris and wife in the sum of $216.06, and that the said several sums bear interest from the 24th of November, 1863.

The defendant commissioners resist these claims and say that the county is liable only for the scale value of the money at the date of its receipt by the county treasurer on November 18th, 1863, and that the payment of $140 in June, 1878, is a full discharge of all the liability of the county.

The facts agreed upon are as follows: That a short time prior to August, 1860, the clerk and master in equity for Lincoln county received into his hands a fund belonging to the estate of John Bradshaw, deceased, to be distributed among the persons entitled thereto; that of the persons so entitled the femes plaintiff form a part, to each of whom there was due the sum of $216.06; that on the 7th of January, 1861, Seth Abernathy and wife received from said clerk and master in equity the sum of $100; that on the 24th of November, 1863, the said clerk and master in equity paid over to W. H. Michal, treasurer of Lincoln county, the sum of $548.26 and entered his receipt therefor on the execution docket, and that this amount was due and payable as follows: To Mrs. Abernathy, $116.06; to Mrs. Keeser, $216.06; to Mrs. Harris, $216.06. That said sum of $548.26 so re-

ceived was expended by said treasurer for the benefit of said county; that on the 1st Monday in April, 1878, demand was made on B. H. Sumner and others, the then board of commissioners of said county, by Seth Abernathy and wife, James Keeser and wife, for the amounts claimed by them as aforesaid, and that the said board on the 4th of June, 1878, at a regular meeting issued an order to pay to James Keeser and wife $140 of said amount due to them which was paid by the treasurer in a few days thereafter, and the said board of commissioners at a regular meeting held on the 1st Monday in August, 1878, issued further orders to the treasurer to pay to James Keeser and wife $76.06 and to Seth Abernathy and wife $116.06.

That on the 7th of October, 1878, a demand was made on said board by Henry Harris and wife for the amount claimed by them as aforesaid, and on the same day the board ordered the amount of $216.06 to be paid them and the order was issued on the 11th of December, 1878, but a new board coming into office on the first of that month, made an order at a regular meeting of the board in January following in the following words: " Ordered by the board that notice be served on the county treasurer, J. C. Jenkins, not to pay any more money to the heirs of John Bradshaw, deceased, on orders issued by the late board." No notice of the same reached the plaintiffs or their counsel until after the said order was made.

Upon this state of facts the court below adjudged that Abernathy and wife and Harris and wife were entitled to receive the amounts claimed by them subject to the scale value, at the time the money was paid over to the board of of county commissioners, from which judgment the plaintiffs appealed.

No counsel for plaintiffs.
*Mr. B. C. Cobb*, for defendants.

ASHE, J. We do not see how the court below could have decided otherwise than it has, upon the facts in the case agreed. The plaintiffs seemed to have entertained the notion that the orders made by the board of county commissioners in their meetings held on the 4th of June, 1878, the 1st Monday in August, 1878, and the 7th of October, 1878, were *adjudications* upon the rights of the parties, and the orders of January, 1879, annulling these orders were *ultra vires* and void.

In this position we do not concur. The allowance of a claim by a county board of commissioners is not final and conclusive. Such an allowance is only *prima facie* evidence of the correctness of the claim. In the case of *Commissioners* v. *Keller*, 6 Kan., 510, it is held that the allowance of a claim by the county board is not final and conclusive. It may be re-examined by the board itself, and on appeal may be examined or disallowed in whole or in part by the court, and it is error to instruct the jury that the allowance of a claim by the board is an adjudication as binding on the parties as the judgment of a court. If the decision of the county board was final and conclusive, then a party who once had a claim rejected for any cause could not again present it for allowance because it would be *res adjudicata,* yet this is constantly done and the practice has not been questioned.

We are therefore lead to the conclusion that an allowance made by a board may at any time be re-examined, modified or annulled, for reasons that may appear to them sufficient.

But it is conceded that the county commissioners received the money of the plaintiffs from the clerk and master and used it for county purposes. The county is therefore liable, but for what amount is the question.

There is no evidence as to the kind of money paid over by the clerk and master to the county commissioners—

whether gold, silver, bank bills, or confederate treasury notes. If the case had stated that the funds received by the clerk and master were of a particular kind, and he had paid over the identical funds to the board, there would be no doubt as to the amount of the liability of the county. But the case does not show that, nor what kind of money or funds were paid over. As it was a notorious fact that confederate treasury notes, about November, 1863, (when this fund was paid over) was the only circulating medium in the ordinary business transactions in this state, we must presume, in the absence of all proof to the contrary, that the fund paid over to the board of commissioners was confederate money. The defendants then are only liable for the value of that currency when received.

Under this view, Keeser and wife having received one hundred and forty dollars in June, 1878, in good money, have been paid more than is due to them. The judgment that Harris and wife and Abernathy and wife recover the amounts claimed by them, subject to the scale, must be affirmed with interest on the amount due Abernathy and wife from the 1st Monday in April, 1878, and on the amount due Harris and wife from the 1st of October, 1878.

There is no error.

No error.                                            Affirmed.