THE STATE v. WM. H. WILKERSON.

*False Pretence—Indictment—Parol Evidence—County Orders.*

1. Parol evidence of the contents of written instruments will be received when the writing comes in question collaterally ; and also, when its possession is traced to the adverse party and he refuses to produce it, without further accounting for its absence.

2. Where the defendant was indicted for obtaining an order, from the Board of Commissioners, for the payment of money on account of the support of a pauper, by means of false pretence that such pauper was a resident of the county, whereas she was in fact dead ; *Held,* that although there may have been no evidence of fraud at the time the pauper was put on the "poor list," yet each application for an order made after her death, knowing she was dead, was proper evidence to go to the jury, to be considered in determining defendant's intent.

3. The description, in an indictment for false pretence, of the property obtained, as " an order for the sum of six dollars, issued for the support of S," sufficiently describes the instrument ; and it is not erroneous to charge that it was obtained from the Board of Commissioners of the county, who represent the county.

4. A county warrant or order may be recalled.

(*Abernathy* v. *Phifer*, 84 N. C., 711, and *Pollock* v. *Andrews*, 68 N. C., 50, cited).

CRIMINAL ACTION, tried before *Philips, Judge,* at January Term, 1887, of the Superior Court of GRANVILLE County.

There was a verdict of guilty, and from the judgment thereon the defendant appealed.

The defendant is charged with having obtained from the county authorities of Granville an order for the payment of money by means of false pretences and fraudulent representations, in violation of §1025 of *The Code.* The indictment consists of two counts, upon the trial of which he was convicted of the second only, and that is in these words: "And the jurors for the State upon their oath do further

present, that William H. Wilkerson, late of the county of Granville, at and in the county aforesaid, on the day and year aforesaid, with force and arms, unlawfully, wilfully, knowingly, falsely and designedly, did obtain from the Board of Commissioners of Granville County an order for the sum of six dollars, issued for the support of Sallie Eastwood, by falsely representing to said Board of Commissioners that the said Sallie Eastwood was a pauper, and a resident of Granville County, and by undertaking to receive and use the said order for the support and maintenance of said Sallie Eastwood, with the intent then and there to defraud; whereas in truth and in fact, the said Sallie Eastwood was not a resident of the county of Granville and a pauper, and was not entitled to receive support from the same, as the said William H. Wilkerson well knew, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The State, in support of the charge, introduced a portion of the records of the board, in possession of the Register of Deeds, in one of the books of which are contained the names of outside paupers, meaning such as received county aid and were not in the poor-house, and an entry made March 4th, 1879, by which the said Sallie Eastwood, of Oak Hill township, was declared an "outside pauper" and allowed $1 per month, "order to W. H. Wilkerson."

It also appeared that a second order for $5 issued on August 4th, 1879, to the defendant for the said pauper.

On the examination of Benjamin F. Bullock, a witness for the State, he testified that the name of the defendant in the book exhibited was in the hand-writing of witness. When he was asked if the order referred to was in writing, and receiving an affirmative answer to his question, defendant's counsel objected to any parol evidence of its contents, the original not being produced nor its absence accounted for. The Solicitor stated, in explanation, that he proposed to show

that such an order was issued every six months, and that the entry of February 28th, 1884, which bore upon it the defendant's name, written by the witness, was offered to show that the order of that date was delivered to the defendant, and that he drew the semi-annual allowance of $1 per month, and that he continued to draw it. The question was allowed, and to the ruling the defendant excepted. Thereupon the witness, who was at the time a deputy of the Register, stated that the order of February 28th, 1884, was in print or writing, and was delivered to defendant, the entry being in the words: "February 28th, 1884; Eastwood, Sallie; one dollar; W. H. Wilkerson;" and showing a delivery to defendant of the order, for the monthly allowance to the pauper; and that such orders were issued twice a year and delivered to defendant.

On cross-examination, the witness further stated that he delivered the order to defendant, drawn on the County Treasurer by the Register of Deeds, for $6 for support of Sallie Eastwood.

It was in evidence that the pauper lived in Granville with her daughter in 1879, in two miles of defendant's residence; that in August of that year, the said Sallie left and moved to Person County, and never returned to her former home, and that she died in December, 1882.

Thomas Washington, Register of Deeds in 1885 and 1886, testified to the delivery of similar orders, for the support of said Sallie during these years, to the defendant, and this testimony was also objected to, because the orders were not produced. But the evidence was received. The witness stated that the last was delivered on February 1st, 1886; that defendant applied for it, when witness told him that it had been reported to the board that said Sallie was dead, when defendant replied that if she was dead, she had died since he left home that morning, and he did not know it; and that there-

upon the order was delivered, and this was the third delivered to defendant by witness during witness' continuance in office for the two years.

W. H. Smith, a member of the board in 1885 and 1886, testified that the pauper list was revised twice a year, and the name of said Sallie was upon it; that in May or June, 1886, defendant came to see him, and said he had heard there was some complaint of his misapplying county funds issued for said Sallie, and he wanted to talk about it; that if she was dead he was not aware of it; that he had used her funds, for which he had no excuse except the sickness of his father and mother, and that " he got the orders issued for the support of Sallie Eastwood and got the money."

The testimony is stated in substance as necessary to an understanding of the defendant's exceptions appearing in the case on appeal.

*The Attorney General,* for the State.
*Mr. L. C. Edwards,* for the defendant.

SMITH, C. J., (after stating the case). 1. The first exception is to the admission of proof of the contents of the several orders issued to the defendant for the pauper's support.

The extent of the general rule, which requires the production of a written instrument to prove its contents, and admits of secondary evidence when it is lost or destroyed, is often misconceived. The rule does not apply to cases where the writing comes up on a collateral inquiry and a party is not expected to be prepared to produce it.

Mr. Justice RODMAN says, in *Pollock* v. *Andrews,* 68 N. C., 50, that " the exceptions are more numerous where the question is only a collateral one, as in this case. I find it decided that one party may prove the admission of the opposite party that he had a lease, note," &c. 1 Greenl. Ev., §97. He also says: " Where the writing is in possession of

the other party, who refuses to produce it, secondary evidence of its contents may be given, even when the contents are directly in issue."

In the present case the papers are traced with the defendant's possession, and the contents are material only as showing their nature and value. The essence of the charge is the fraudulent practices and pretences by which the defendant obtained them.

Moreover, the defendant admitted that he got the county orders and the substance of what they contained. It would not be necessary, in an indictment for stealing bank notes, to have the notes present, nor would it be, in our opinion, necessary if the larceny were of a bond or note. The contents are material only as showing the nature of the instrument, and are not drawn in controversy in the sense of the rule requiring the production of the papers themselves.

2. It is insisted, and so the Court was asked to charge, that there was no evidence to sustain the averment that any false or fraudulent representations were made to the County Commissioners, and that, in order to a conviction, this proof was indispensible. The instruction was that, "if the jury believed, beyond a reasonable doubt, that the defendant fraudulently, designedly, knowingly and falsely represented to the Board of County Commissioners of Granville, whether such representation be in writing, or in words, or in acts, that Sallie Eastwood was a resident and pauper of Granville, when, in truth and in fact, she was not a resident and pauper, and this was known to him, and that by means thereof he obtained the order, he is guilty."

The only defect imputed to the charge in this connection is, that it was left to the jury to find the alleged false representations to the board, when there was no evidence of them. The defendant said, in his conversation with the witness Smith, that he "got the orders issued" for the pauper's support, and "got the money." This is certainly some evi-

dence, in the absence of any other agency, of his instrumentality in having the pauper placed on the list, of the orders directing payment to him, and of his being the only person to whom they issued. Now, originally, this was right, for then the facts did warrant the order for her allowance. This being so, after her removal, when she ceased to be entitled to it, every fresh application was, in fact and effect, a reaffirmation of her continuing rights as a pauper, and an act as expressive and significant as would be words to the same effect. This is plainly the import of what the defendant said to the witness, who issued the last order, when told of the reported death of the pauper, that if dead he did not know it, and in consequence of such statement the order was issued by the agent of the board, and in the name of the board, and received by the defendant. The fraud then was perpetrated in the implication from the application that the pauper continued to be entitled to her allowance.

3. The motion in arrest of judgment must also be overruled. The allegation that an order was obtained from the Commissioners for six dollars sufficiently describes the instrument as an order or warrant drawn by their officer upon the County Treasurer—the appropriate method of disbursing the public moneys, (*The Code,* §777,) so that all the elements are involved in the charge necessary in describing the instrument unlawfully obtained.

A further objection is made, in that the statute speaks of the obtaining money, &c., by false pretences, from "any person or corporation," and that the county is the corporation, not the Board of Commissioners. We do not perceive the force of the argument. The statute uses words that cover the case, whether the board be *person* or *persons*, for the singular number includes the plural, (sec. 3765, par. 1,) or a corporation. But the boards are county agents, and the county sues and is sued in their name. Section 704. And it acts by and through them. Sections 705 and following.

The county warrant is not entirely like a bill of exchange in the relations it creates between independent parties. It is but a mandate from one officer to another to pay a third person, and as such is but evidence of a debt and may be recalled. *Abernathy* v. *Phifer*, 84 N. C., 711.

There is no error, and the judgment must be affirmed.

Affirmed.