During the progress of the trial the plaintiff introduced evidence tending to show that the deed of assignment from Brown to Jones was preferred and executed on 21 November, 1890, and withheld from record till the morning of 27 November, 1890, and that after the execution of said deed, and before the recording thereof, the assignor Brown executed and delivered to one J. M. Monger the following power of attorney:
"This is to certify that John M. Monger is our agent to contract for the purchase of goods, collect all amounts due us, and generally to do and act for us in as full a manner as if we gave our consent to each individual act of his.
"21 November, 1890. L. T. BROWN."
That said Brown at the time of the execution of the deed of assignment and said power of attorney had on hand a large assortment of goods, the greater part of which he had purchased within the thirty days prior to the assignment, and that said J. M. Monger, immediately after the execution of the said power of attorney, went south, and in a section in which the said Brown had not heretofore purchased goods, and purchased goods for the said Brown on credit to the amount of $6,000, and that said Jones, assignee, knew of these transactions.
There was also evidence introduced by plaintiff tending to show that one Terrell, agent for R. G. Dun's Mercantile Agency, called on Jones, assignee, who was doing business in Sanford, N.C. and in the same town in which the said Brown was doing business, between 21 and 27 November, 1890, and informed him, Jones, of his agency, (636) and that he was seeking information of the standing, etc., of the business men of Sanford for his firm, and that said Jones informed him that the said Brown was, in his opinion, worth about $5,000; that he (Brown) was doing a very good, straightforward business, and that his store was one of the largest in town. *Page 357 
Plaintiff also introduced evidence tending to show that one J. S. Harper, traveling salesman of Harvey, Blair Co., one of the plaintiffs, during the month of October, 1890, called on the defendant Jones for information as to the financial standing of the said Brown, and in response thereto Jones informed said Harper that Brown was worth about $5,000, and that at said time, and at the time of the information given by Jones to Terrell as aforesaid, said Jones held unrecorded mortgages on all the real and personal property of said Brown to secure an alleged indebtedness of $5,500.
The defendant Jones testified upon cross — examination by the plaintiff that a short time prior to November, 1890, he, Jones, had disposed of all of his property with intent to defraud one of his creditors.
There was also evidence tending to show that the true indebtedness from Brown to Jones was not $5,500, the amount preferred in said deed of assignment, but was a sum much less than that amount.
There was also evidence tending to show that a short time before the execution of the deed of assignment, and while the said Jones held the unrecorded mortgages on all the real and personal property of the said Brown, said Brown represented to Sweetzer, Pembroke Co., of New York, that he was worth from $5,000 to $7,000 over and above all exceptions and liabilities, and that he purchased goods on a credit upon faith of these representations.
There was also evidence tending to show that though the (637) assignee Jones was authorized in said deed of assignment to pay Brown, assignee, $500 in money in lieu of his personal property exemption, upon an execution issued against said Brown after the execution of the deed of assignment, said Brown demanded, selected and had allotted to him his personal property exemptions in property to a large extent not conveyed in the deed of assignment.
The plaintiff then insisted that there was before the court sufficient evidence of a combination and conspiracy between the assignor and the assignee to defraud the creditors of the assignor, to admit the declarations of the assignor made subsequent to the deed of assignment. His Honor was of that opinion, and so ruled. Upon this, the plaintiff introduced as a witness for itself J. M. Brown, who testified as follows:
"I am a brother of L. T. Brown. I had a talk with him at my house after the assignment, the next spring after it was made. He said the assignment was all a damned fraud, and that he would not come to court because it would ruin him and injure Mr. Jones. He told me this a dozen times." To all of which the defendants excepted.
The plaintiff then introduced a witness, one N. B. McBride, by whom it proposed to prove a conversation that he had with the *Page 358 
assignor after the execution of the deed of assignment. The defendants objected; objection overruled; defendants excepted.
This witness was then permitted to testify, as follows, to wit:
"I had a conversation with Brown, assignor, after the assignment. It was at Greensboro, in April, 1892. He said he wanted to go home to see Jones, and if Jones would give him his house and lot back he would let things go on as they were, and if they did not he would go on the stand and burst it up, for it was a fraud from beginning (638) to end; that he was due Jones $2,000 and that he made the assignment to pay the debt. He said to Mr. Douglas that if Jones did not come to terms he was going to employ some one to burst it up. Mr. Douglas told him to stop, when he began to talk, for he was employed on the other side."
To this the defendants excepted.
The plaintiff then introduced as a witness one M. B. Buchanan, by whom it proposed to prove similar declarations of Brown, the assignor, after the assignment. The defendants objected; objection overruled; defendants excepted.
The witness was then permitted to testify, as follows, to wit:
"I heard a talk between Brown and McDonald; Brown said he owed Jones some money, but not so much as he claimed, and if he did not give him back his house and some money he would go on the stand and break the infernal fraud; that he was strapped and had nothing. This was at Greensboro in the spring after the assignment."
The defendants excepted to the ruling of his Honor on the sufficiency of the testimony going to show the conspiracy; and they also objected to the introduction of the declarations made by the assignor after the execution of the deed of assignment. The court did not sustain the exception and overruled the objection to the testimony, and in so doing committed no error. "In order to make the declarations of the assignor after the assignment competent evidence, it must be shown that the assignor and the assignee are combined in a common conspiracy to defraud the assignor's creditors, and this common purpose must be established by evidence other than the declarations themselves." Burrill on Assignments, sec. 362, and the cases there cited.
The defendants introduced as a witness J. G. Bynum, who (639) testified that on 27 November, 1890, and after said deed of assignment had been executed, to wit, on the night of the same day, he sent a telegram to one J. M. Monger.
The defendants then introduced one G. E. White, who testified as follows, to wit: "I am agent of the railroad, and telegraph operator. I sent a telegram to Monger. It has been destroyed or burnt. I have searched for it and it cannot be found. Some are sent to *Page 359 
headquarters and some are destroyed. I don't know what became of this one. All commercial telegrams are sent to headquarters. No search has been made at headquarters."
Upon this evidence the defendants offered to prove the contents of said telegram purporting to contain a declaration of said Brown, assignor, made to said Bynum subsequent to the execution of the said deed of assignment and in his own interest supporting said deed. The said J. M. Monger, to whom it was claimed said telegram was sent, was present in attendance upon the trial of this cause at the time the defendants offered to prove the contents of said telegram by said White, having been subpoenaed as a witness by both plaintiff and defendants, and was not offered by the defendants to prove the receipt or contents of said telegram. The plaintiff objected; objection sustained. Evidence excluded; defendants excepted.
His Honor committed no error in refusing to let the witness White testify as to the contents of the alleged telegram. He did not show its loss or destruction, and what he said about it was confused and conflicting. Secondary evidence of the contents of telegrams is admissible on the testimony of the clerk of the telegraph company that the original telegrams have been destroyed. 100 N.Y. 446; Smith v.Eastern, 54 Md. 138. In response to plaintiff's prayer for instructions his Honor among other things charged the jury as (640) follows:
1. If the jury shall find that the deed was not made to secure bona fide
debts, but for the mere purpose of giving ease to the debtors, it is fraudulent and void and the jury should so find.
2. That if the jury should believe from the evidence that any part of the debts preferred in the deed of assignment were fictitious and this fact was known to the assignor Brown and the assignee Jones, then the deed is fraudulent and void and the jury should so find.
3. If the jury should find that there was an agreement between said Brown and Jones that they or either of them should falsely represent said Brown to be solvent, and upon this representation purchase goods so as to have a sufficient quantity on hand to save Jones harmless by making the deed of assignment, and upon these representations the said Brown did purchase from the creditors herein, then the deed is fraudulent and void, and the jury should so find.
The defendants in apt time excepted to the foregoing instructions numbered 1, 2 and 3, and his Honor proceeded to instruct the jury, as follows, without objection or exception:
4. Every debtor in failing circumstances has the legal right to make an assignment of his property for the benefit of his creditors and has *Page 360 
the legal right to prefer such of his creditors as he may wish to pay to the exclusion of the others.
5. The test as to whether a conveyance is fraudulent is not whether in fact it hinders or delays a creditor in the collection of his claim, but whether or not it was made with intent to so hinder or defraud his creditors. If there be no such intent in the mind of the assignor at the time the conveyance is executed, it matters not what effect (641) the execution of the conveyance may have.
6. Although the jury should believe that the assignor Brown made false representation to sundry parties in the fall of 1890, for the purpose of obtaining goods, this is not sufficient to vitiate the assignment, and should not be considered by the jury, except as a circumstance to assist them in discovering the assignor's intent at the date of the assignment.
7. The fraudulent intent must have existed in the assignor's mind when the deed was executed and delivered, and although he may have previously intended to assign his property to defraud his creditors, still if the deed was bona fide, and no such intent existed in the assignor's mind at the time of its execution and delivery, the deed would not be fraudulent, and the plaintiff would not be entitled to recover.
8. If the jury should find that the execution of the deed of assignment operated to the ease, comfort or benefit of the assignor Brown and to the injury of creditors, this would not make the deed fraudulent or void unless made with that intent on the part of Brown that it should so operate.
9. If the jury should find that the assignor Brown or the assignee Jones, before the date of assignment, made false representations to various parties with a view of obtaining goods to enable said Brown to continue his business, or for any other legal or legitimate purpose, and not for the purpose of hindering, delaying or defrauding creditors, the deed of assignment it not for that reason void.
In further response to the plaintiff's prayers for instructions the judge instructed the jury as follows:
10. If the jury shall find that said deed is fraudulent as to one (642) creditor, they should find that the deed is fraudulent and void as to all.
11. If the jury should find that L. T. Brown executed the deed with the view of becoming indebted, said deed would be fraudulent and void, and the jury should so find.
12. If the evidence is sufficient to produce a belief in the minds of the jury, and the jury should believe it and are satisfied that the deed of assignment was executed with intent to defraud, defeat, delay or *Page 361 
hinder the creditors of L. T. Brown, then they should find in favor of the plaintiff, and answer the issue "Yes."
13. In cases where fraud is alleged the jury are to consider circumstances connected therewith and to give each its proper weight, and if upon the whole testimony the jury believes that the deed of assignment was executed with intent to defraud any one of his creditors, then they should find in favor of the plaintiff and answer "Yes" to the first issue.
To the foregoing instructions, numbered respectively 10, 11, 12 and 13, the defendants excepted in apt time.
The defendants prayed the following instructions:
1. Although the jury should believe that the defendant S.D. Jones indorsed for his assignor Brown or loaned him money, and said Brown promised to save him from loss on account of said loan or indorsement, and in his deed of trust, and in fulfillment of said promise preferred said Jones for the amount of said indebtedness, this transaction would not make the conveyance fraudulent per se (nor is it evidence of fraud to be submitted to the jury).
So much of said prayer as is included in the parenthesis was included. Defendants excepted.
2. If the jury believe that the deed of assignment was drawn 21 November, 1890, retained by the assignor and not delivered till 26 November, 1890, this per se is no evidence of fraud on the part of the assignor Brown. (643)
His Honor refused to so instruct the jury, but instructed them that this was a circumstance which they might consider with its surroundings. To this the defendants excepted.
3. The fact that the assignor did not include all of his property in the deed of assignment is not per se evidence of fraud.
His Honor refused to so instruct the jury, but directed them to consider this circumstance with its surroundings and weigh it with the other evidence in the case.
4. The fact that the deed of assignment requires the assignee to sell the property conveyed and pay the assignor $500 as his personal property exemption, does not render the assignment fraudulent or void upon its face (nor is it per se evidence of a fraudulent intent upon the part of the assignor).
His Honor refused to charge the clause enclosed in parenthesis, and defendants excepted.
His Honor then proceeded to instruct the jury that they might consider the fact that the assignor required the assignee to sell the property conveyed and pay him, assignor, $500, his personal property exemptions, with the other evidence in the case bearing thereon, and give *Page 362 
it such weight as in their judgment it was entitled bearing upon the question of the fraudulent intent of the assignor at the time he executed the deed of assignment.
5. If the jury should find that some of the debts named in the deed of assignment were feigned and fictitious, and the others good and valid, it is the duty of the jury to sustain the deed as to the valid debts in any event. Refused, and the defendants excepted.
6. The law presumes the deed of assignment valid. The burden (644) of showing that it is fraudulent rests upon the plaintiff (who must satisfy the jury by strong, clear and convincing proofs that it is fraudulent; otherwise, it is the duty of the jury to sustain the assignment as valid).
The clause enclosed in parenthesis is refused and the following was given instead thereof: "who must satisfy the jury fully, clearly and completely that it is fraudulent; otherwise, it is the duty of the jury to sustain the assignment as valid," and defendants excepted.
There is nothing in defendants' exception to number 2 of plaintiff's prayer for instructions which was given by the court; and while numbers 1 and 3 might have been fuller on the points they touched, yet there is no error in them when taken in connection with the rest of the charge.
There is error in the court's having given the plaintiff's prayer number 10. The doctrine laid down in Stone v. Marshall, 52 N.C. 300, was overruled by Morris v. Pearson, 79 N.C. 253. There is error also in his Honor's having given number 11 of plaintiff's prayer for instruction. We are also of the opinion that number 4 of defendants' prayer should have been given with the explanation and limitation which followed that part of it which his Honor did give. Number 5 should also have been given with the qualification that such would not be the law if there was a conspiracy between the assignor and the assignee to hinder, delay and defraud the creditors of the assignor at the time of the execution of the deed of assignment. There is error in the particulars set out in this opinion, and the defendants must have a new trial.
PLAINTIFF'S APPEAL IN SAME CASE.