MITCHELL v. GARRETT.

(Filed February 27, 1906).

*Ejectment—Title—Hertford County Act—Presumptions.*

1. Chapter 773, Acts 1905, by doing away with the necessity of proving that title to land in Hertford County is out of the State does not go further and provide that the title should be presumed to be in any person who may bring suit and exhibit a perfect chain of deeds without any proof of title, but the claimant must also show by proof sufficient in law for that purpose, that he has in some way acquired the title.

2. The plaintiff's contention that under the Act of 1905, chapter 773, his title was superior to that of the defendant because his deeds were older in date, is not sound.

ACTION by Geo. H. Mitchell and others against J. R. Garrett and others, heard by *Judge R. B. Peebles* and a jury, at the Fall Term, 1905, of the Superior Court of HERTFORD.

Plaintiffs brought the action to recover possession of a tract of land and damages for cutting timber therefrom. They claimed to have established title under the provisions of a recent act of the General Assembly, entitled "An Act to facilitate and cheapen the trial of actions involving the title to or interest in real estate," being chapter 773 of the Public Laws of 1905. The chain of title of each of the parties was set out in the pleadings. The plaintiffs' is as follows: 1. Deed from Elisha A. Chamblee to John Stallings, dated May 25, 1835. 2. Deed from John Stallings to Charles Northcott, dated November 30, 1836. 3. Deed from Charles Northcott to John A. Anderson. 4. Deed from John A. Anderson to Luke McGlaughon, dated March 12, 1844. 5. The will of Luke McGlaughon, dated April 10, 1858, and proof that the plaintiff, G. H. Mitchell, married Martha McGlaughon, daughter of Luke McGlaughon and after her death, the other daughter of Luke McGlaughon, Nancy Vann, widow of Jesse Vann, and that the other plain-

tiffs are the children of said daughters, the latter being dead. Plaintiffs claim under the said will and by descent from their mothers, except G. H. Mitchell, who claims as tenant by the curtesy. Plaintiffs introduced in evidence the deed from John A. Anderson to Luke McGlaughon, which recites the other deeds of prior date and refers to them as deeds conveying the same tract of land, but did not introduce any of the other deeds. They then offered to prove by G. H. Mitchell that the deed from John Stallings to Charles Northcott was lost, except the lower part of it, which the witness had in his possession, and further that he had seen the deed before it was mutilated and destroyed and that it had been duly registered sometime before this action was brought and that the records of Hertford County were burned in 1862. This evidence was offered to show that said deed conveyed the land in dispute. The court excluded the evidence and the plaintiffs excepted. There was evidence on the part of the plaintiffs tending to show that the land, which is known as the "Stallings Tract," has fixed and definite boundaries which consisted of marked trees around the tract, and that this is the same land described in the complaint. There was no evidence of adverse possession in plaintiffs, or those under whom they claimed, for seven years. The defendants introduced the deeds constituting their chain of title and evidence which, as they claimed, tended to show title in them, but it is not necessary to set it forth. Defendants moved to nonsuit the plaintiffs at the close of their testimony, which motion was refused. At the close of all the testimony, they moved again to nonsuit the plaintiffs. The motion was granted and the action dismissed. Plaintiffs excepted and appealed.

*Winborne & Lawrence* for the plaintiffs.

*Pruden & Pruden* and *Shepherd & Shepherd* for the defendants.

WALKER, J., after stating the case : The mode of proving title to land in this State has become so thoroughly settled by the decisions of the court that it is hardly necessary to enter again upon a discussion of the subject or to do more than refer to the most recent cases in which the different methods have been stated. *Campbell v. Everhart,* 139 N. C., 503 ; *Mobley v. Griffin,* 104 N. C., 112. It is clear that plaintiffs have not established any title whatsoever to the *locus in quo* by any of the ordinary ways known to the law. Their counsel have admitted in the first sentence of their brief, that they have not shown any adverse possession of the land sufficient to ripen any color of title they may have had into a good and perfect title, and they must therefore fail in this action, upon their own showing, unless by virtue of the provisions of the Act of 1905, chap. 773, they can succeed. We do not think that act, upon the facts as they now appear, can possibly bear any construction which will aid the plaintiffs or create in their favor a *prima facie* case which would put the defendants to proof in their defense. The meaning of the act is palpable. It does not profess to confer title on any one who may be able to produce a succession of deeds which are not connected with the original title of the State, or are not shown by proof of adverse possession or an estoppel or in some other way to vest a good title in him. It was intended merely to dispense with proof of the fact that the State had parted with its title, because of the difficulty of showing a grant since the destruction of the county records, and any person asserting title to land in that county is still required to otherwise prove it in the same manner as it must be established in a cause pending in a court of any other county where no such statute is in force, and where it has either been shown or admitted that title is out of the State. In other words, the statute, by doing away with the necessity of proving that the title is out of the State, does not go further and provide that the title shall be presumed to be in any person who may bring suit and exhibit

a perfect chain of deeds without any other proof of title, but the claimant must also show by proof, sufficient in law for that purpose, that he has in some way acquired the title. That this is obviously the meaning of the act, will appear by the most cursory examination of its provisions. Each party to the action is required by section 2, to set out his chain of title and it is provided that, when this is done, "the party proving the superior title shall be entitled to recover in the action." It will be observed that the act, in express terms, requires that the plaintiff, in order to prevail in the action, must "prove" or establish a title superior to that of defendant, for the burden of the issue, being upon him, he cannot rely upon the weakness of his adversary's title. The language of the act which we have just quoted does not change in the least the general rule in the law of ejectment, that the plaintiff must fail unless he shows a title good against the world, or good against the defendant by estoppel. By the provisions of the act, each of the parties is given precisely the same advantage he would have had if the act had not been passed, and he had been able to show title out of the State by introducing a grant to some third party or by showing such adverse possession as would raise a presumption that the title was out of the State. In trials involving title to land in Hertford County, title is presumed to be out of the State, but not to be in either of the parties to the suit or in any person from whom he deraigns his title. It is still open to either of them to show a grant from the State, if it can be done, to any person under whom he claims and with whose title, thus derived, he can connect himself by *mesne* conveyances, or he can show open, notorious, continuous and adverse possession for twenty years without color or for seven years with color, or he may establish title in any other way allowed by law. That this is the construction of the act is rendered absolutely certain by the language of section 3, in which it is provided that adverse possession, such as will ripen title, may still be shown by

either party in order to establish his title, either by proving that the person under whom he claims had acquired title by such a possession and then connecting himself with the title so acquired, or by proving such a possession in himself for the required time. But however this may be, the act in explicit terms requires that the plaintiff must show a title superior to that of the defendant before he can succeed in the action, and this he did not do. If we assume that neither party introduced any evidence of title, the plaintiff being the actor and the one who carries the burden of the issue, must of course be cast in the suit. Possession, being *prima facie* evidence of ownership, will protect the defendant, unless the plaintiff show a title or right to oust him. 2 Lewis Blk., p. 663, note (7); Tyler on Ejectment, 204; Newell on Ejectment, 433 (13).

We need not pass upon the question of evidence. The general subject is discussed in *Avery v. Stewart,* 134 N. C., 287. If the evidence was competent and had been admitted, it would not have strengthened the plaintiffs' case, as they did not introduce the deed from Northcott to Anderson or in any other way connect themselves with the title alleged to be in Charles Northcott, and if George Stallings had the title, it would have passed by his deed to Charles Northcott, and plaintiffs having failed to show that they had acquired the latter's title, would have proved the title to be not in themselves, but in a third party, namely, Charles Northcott. Besides, whether the evidence was competent, and should have been admitted or not, can make no difference in the result, as plaintiff failed to show any adverse possession for a sufficient length of time under any of the deeds to ripen their title, and they did not attempt to show title from the State by grant and *mesne* conveyances or otherwise to themselves. The only contention made in the case by the plaintiffs' counsel was that under the act their title was superior to that of the defendants because their deeds were older in date. Such a construction

140    26

of the act would not, in our opinion, be a sound or safe one. It would present an anomaly in the law and might threaten, if not destroy, vested rights and established titles, which surely could not have been contemplated by the Legislature.

The ruling of His Honor was clearly right and must be sustained.

No Error.