MAHONEY-JONES COMPANY, SOUTHWEST VIRGINIA GROCERY COMPANY, PEERY GROCERY COMPANY, BRISTOL GROCERY COMPANY, MARLER, DALTON, GILMER COMPANY, EAGLE MANUFACTURING COMPANY, HAMILTON-BACON-HAMILTON COMPANY, WEST JEFFERSON HARDWARE AND SUPPLY COMPANY, PHILLIPS & DILLARD, AMERICAN WHOLESALE CORPORATION, BLUMBERG BROTHERS COMPANY, MANHATTAN BARGAIN HOUSE ET ALS. v. JAMES OSBORNE AND FIELDEN OSBORNE, DOING BUSINESS UNDER STYLE AND FIRM NAME OF JAMES OSBORNE & COMPANY, AND H. L. ROTEN.

(Filed 15 April, 1925.)

**1. Evidence—Letters—Secondary Evidence.**

Where the issuable matter in the controversy is whether the defendant was a member of a partnership and thus liable for its debts, original letters addressed to the defendant asserting he was a member are the best evidence of their contents, and not collateral to the issue, and the admission of parol evidence of their contents is reversible error, in the absence of legal notice to the defendants to produce them or other evidence or findings of the trial court required as a prerequisite thereto.

**2. Same—United States Mail—Presumptions.**

Where a letter from the plaintiff is primary evidence of its contents, upon the trial of an issue, evidence that it had been properly addressed, stamped and mailed prima facie presumes its delivery to the defendant; but before secondary evidence of its contents is properly admitted, the lawful prerequisites as to its admissibility must be observed.

**3. Same—Notice—Appeal and Error—Findings of Fact.**

In an action to fix liability on defendant for the debts of a partnership as a member thereof, plaintiff relied upon a letter he had written to the defendant charging him with this connection, and properly addressed, stamped and mailed it, but received no reply. There was evidence that defendant had left the State and consequently the jurisdiction of our courts and he was absent from the trial. In the absence of due notice to defendant to produce the letter: *Held*, the burden of proof was on the plaintiff to show that the defendant had the letter or that it was under his control or he had lost the same, and that diligent search had ineffectually been made in the proper place or places, or sufficient to establish the loss of the instrument, requiring the trial judge to make his findings upon the evidence and the review of the law applicable being only permissible on appeal.

**4. Evidence—Replies to Letters.**

Answers to letters written to a party to an action are competent as evidence therein, and prima facie presumed to be genuine.

APPEAL by defendant, Fielden Osborne, from *McElroy, J.*, at July Term, 1924, of ASHE.

This is an action by the creditors to charge Fielden Osborne with the debts of Jas. Osborne & Company. Fielden Osborne denied that he was, or ever had been, a member of this partnership, and denied liability to the plaintiffs, or any of them.

The plaintiffs contended that Fielden Osborne was the silent partner of James Osborne, his son. By virtue of the admissions of record, the whole controversy was made to depend upon the answer of the jury to the issue: "Was the defendant, Fielden Osborne, a member of the firm of James Osborne & Company, as alleged in the complaint?" The jury answered this issue, "yes," and from a judgment rendered thereon, the defendant, Fielden Osborne, appealed to this Court.

*J. B. Council and Chas. B. Spicer for plaintiffs.*
*T. C. Bowie for defendant.*

VARSER, J. There was much evidence tending to show the contentions of the respective parties. The plaintiffs introduced direct testimony tending to show that the defendant had admitted that he was a member of the firm of James Osborne & Co., with his son, James Osborne. The evidence for plaintiffs further shows that notice that James Osborne had reported to mercantile agencies that Fielden Osborne was a member of this firm had been brought to the knowledge of Fielden Osborne, and that he failed to make timely denial.

The defendant contended that he had answered all letters and requests that had come to him, except in one instance. In this instance he claims that he was advised by a friend to seek the advice of counsel, and that he had done so, and had followed such advice, and that this amounted to due care and ordinary prudence to prevent the extending of credit upon his responsibility.

The trial court permitted the plaintiffs to introduce, over defendant's objection, parol evidence of the contents of letters which the witness, Tucker, testified he wrote to the defendant, Fielden Osborne, and received no reply from him. Over the defendant's objection, this witness was allowed to state that he wrote to Fielden Osborne, at Apple Grove, his postoffice, and never received any reply to any of these letters, and that the letters written by the witness to Fielden Osborne were to the effect that the account due by James Osborne & Co. to the West Jefferson Hardware and Supply Company, of which the witness was secretary and treasurer, was past due, and that payment was demanded; and that he also wrote Fielden Osborne in these letters that James Osborne said that he, Fielden, was one of the partners (in the firm of James Osborne & Co.), and that "We were looking to him to pay the bill."

The record does not disclose that any notice was given to the defendant, Fielden Osborne, to produce the letter, or letters, or, in default thereof, that secondary evidence would be introduced; nor does the record show that the witness did not retain or have any duplicate original of this letter or copy thereof, nor that any effort, by notice or otherwise, had been made to procure the letter, or letters, from James

Osborne, or any preliminary finding that the letters were lost. James Osborne was not present at the trial, and his wife testified that he was now living in the State of Washington.

There is no evidence tending to show any effort in search for either a duplicate original, or any copy, carbon or press, of these letters. The court found no facts as a basis upon which to introduce this secondary evidence.

The plaintiffs contend that this evidence is competent, for that the letter is collateral to the issue, and therefore the "best-evidence" rule does not apply. *Holloman v. R. R.*, 172 N. C., 372. This case announces that the familiar doctrine contained in *Ledford v. Emerson*, 138 N. C., 502, that "the rule excluding parol evidence as to the contents of a written instrument applies only in actions between parties to the writing and when its enforcement is the substantial cause of action."

We are of the opinion that defendant's exception in the instant case presents the very test, as to the collateral character of the letters to Fielden Osborne, required in *Ledford v. Emerson, supra*. The action is between the parties to the writing, and the cause of action in the instant case is for the purpose of enforcing obligations which the plaintiffs seek to establish against Fielden Osborne by virtue of such letters, and his failure to reply thereto. The contents of the letters related directly to the only question at issue. If the situation had presented the converse view, by offering the contents of a letter from Fielden Osborne to the plaintiffs, admitting that he was a partner, or agreeing to pay these debts, it would have been admittedly not collateral to the issue. The same effect is contended for by showing a letter from the plaintiffs to him, and an implied admission resulting from his failure to answer, and the very same direct proof is produced.

When a letter, properly addressed, with the requisite postage thereon, is placed in the mail, a presumption arises that it was received by the person to whom it is addressed. *Beard v. R. R.*, 143 N. C., 137.

This, however, does not abrogate the best-evidence rule as to the proof of the contents of such letters. If this letter was received by the addressee, then the value of the contents as evidence arises out of his failure to reply, denying the partnership. Therefore, the very reason for the competency and materiality of the offered evidence is based on the receipt of such a letter, or letters, by this defendant; hence it was necessary to give him timely notice to produce such letters, to lay the foundation for secondary evidence of the contents of these letters.

It is well settled that "where the writing is in the possession of the adverse party, who *refuses* to *produce it*, secondary evidence of its contents may be given, even when the contents are directly in issue." *S. v. Wilkerson*, 98 N. C., 696; *Pollock v. Wilcox*, 68 N. C., 47.

If the writing is in the adversary's possession, notice to produce it *must* be *given* to authorize the *introduction* of *secondary evidence.* *Nicholson v. Hilliard,* 6 N. C., 270; *Overman v. Clemmons,* 19 N. C., 185; *Robards v. McLean,* 30 N. C., 521; *S. v. Wilkerson, supra; S. v. Kimbrough,* 13 N. C., 431.

In the *Kimbrough case* the Court, speaking through *Henderson, C. J.,* announces that the basis of secondary evidence of the contents of writing in possession of the adverse party is that the notice to produce must be given to the adverse party for his protection, in order that he may protect himself against the falsity of secondary evidence "which the law presumes may be false as its very name imports." Notice, therefore, must be given to the adverse party, who either has the possession of such writings, or, according to the prima facie showing of the party offering such evidence, ought to have the possession. This affords an opportunity of correcting the falsity of such evidence, if it should exist. Therefore, the practice has long been to include, in the notice to produce, a statement that if the writings are not produced, secondary evidence will be offered of their contents.

As applied to the instant case, the gist of the reason for requiring the production of the writing is "that the law will not trust to a frail memory of any man upon that point when the higher grade of evidence, constituted by the instrument itself, is kept back." *Threadgill v. White,* 33 N. C., 592.

A learned discussion of the notice to produce appears in paragraph 1202, Wigmore on Evidence (2 ed.). This author says the true reason upon which this rule is based is that he who offers secondary evidence of the contents of a written instrument must produce the document, if he can, and that when he says that he cannot, and shows that he cannot, because his adversary has it and will not bring it in, he has met this requirement. The courts have not been too strict in the requirement of proof that the proponent cannot bring it in when the opponent is supposed to have possession of the written instrument, and therefore they treat a simple notice, or demand, as a sufficient compliance with this requirement. The other reasons for the rule, to wit, preventing a false copy and preventing surprise on the opponent's part, have been accepted by the courts in many instances.

*Smallwood v. Mitchell,* 3 N. C., 144. This case holds unequivocally "that you cannot read the copy unless you have given notice to the plaintiff to produce the original." In this case a copy is treated as secondary evidence. *Bryan v. Parsons,* 5 N. C., 153; *Nicholson v. Hilliard,* 6 N. C., 270; *Whitley v. Daniels,* 28 N. C., 481; *Murchison v. McLeod,* 47 N. C., 240; *Ivey v. Cotton Mills,* 143 N. C., 189.

The policy of the law in this State has moved a long way from the rigid common-law rule when it denied the right to require the adversary

to produce writings for the benefit of a party to the suit. From this hard and fast rule, the courts of equity offered relief by way of a bill of discovery, and then the rules relaxed themselves in order to produce less delay and to bring about a trial upon the merits. C. S., 1823, 1824, and 1825, make ample provision to allow a party to obtain an inspection, or copy, of documents in his adversary's control, and also to produce, on motion and notice, books or writings containing evidence pertinent to the issue. C. S., 1825, provides the useful method of obtaining an admission of the genuineness of any paper-writing material to the action, and if the party declines to admit the genuineness, and it is finally proved or admitted on the trial, the court may tax the costs against the party who refuses the admission, unless he has good reasons for refusing. All the hardships that might otherwise result from a rigorous enforcement of the rules in this regard have been obviated under our decisions and these statutes.

If, however, the court below proceeded upon the idea that the letter in controversy was probably in the possession of James Osborne, and that he was out of the State, this reason would not be sufficient. *Davidson v. Norment,* 27 N. C., 556; *Threadgill v. White, supra.*

In *McCracken v. McCrary,* 50 N. C., 400, the Court says: "The fact that the bond was delivered to Brown, and that he had left the State, tended to show that he had it in his possession; if so, the fact of its being out of the State did not make parol evidence of its contents admissible." This case also holds that, when there is no evidence that the document is in the possession or within the control of the defendant, the notice to him to produce it amounts to nothing. It would be necessary, in the instant case, in order for notice to Fielden Osborne to support the admission of secondary evidence as to the contents of the letter, or letters, for the court to find that he had either the possession of such letter, or letters, or that they were within his control. If they were lost after receipt, another rule prevails.

If the trial court should find that the letters in controversy were never received by Fielden Osborne, and that he never knew that in such letters he was charged with being a member of the partnership, then, of course, the letters could not be competent for the purpose of showing an implied admission of the partnership.

It may be that the court may hereafter find as a preliminary question of fact that he received such letters, but was now unable to produce them in response to notice, because they were either lost or destroyed. Then it is necessary that such finding be made by the trial court as a prerequisite to the admission of secondary evidence of their contents.

In *Gillis v. R. R.,* 108 N. C., 441, the rule appears in the following statement, taken from 1 Greenleaf Ev., sec. 558: "The question whether

29—189

the loss of the instrument is sufficiently proved to admit secondary evidence of its contents is to be determined by the court and not by the jury."

Of course, the burden of proof to show affirmatively the existence of all facts necessary to make secondary evidence competent in such instances is upon the party offering such evidence.

*Smith v. Moore,* 149 N. C., 185, puts the exceptions to the best-evidence rule, and to the hearsay-evidence rule, in the same class, basing both upon the doctrine of necessity.

Inasmuch as the plaintiffs relied upon an exception to the best-evidence rule, it was necessary in the instant case for them to show either the possession or control of the letters by the defendant, Fielden Osborne, or that the same had been lost after he had received them. In the latter instance, proof that a diligent search has been made for the writing, in the proper place, or places, is sufficient to establish the loss of the instrument. Such secondary evidence will not be received on the ground that the instrument itself is lost, until it is shown that a diligent search has been made for the writing. *Avery v. Stewart,* 134 N. C., 287.

The character of the search necessary, and the *quantum* of proof, and the duty of the trial court with reference to these questions, are fully discussed in *Avery v. Stewart, supra.* It is therein stated: "In order to dispense with the production of it (written instrument), it was incumbent on the plaintiff to give all the evidence reasonably in his power to prove the loss of it"; and "it is the duty of the judge to decide the facts upon which depends the admissibility of testimony"; and "it is the duty of the judge to state the facts found by him from the evidence, if requested to do so by the party excepting to his ruling," and his findings of fact cannot be reviewed in this Court; but if he does state the facts, either of his own motion or at the request of a party, this Court can review a conclusion which is based upon the finding, for this presents necessarily the question of law.

These doctrines, as set forth in *Avery v. Stewart, supra,* have been reaffirmed in the following: *Mitchell v. Garrett,* 140 N. C., 397; *Green v. Grocery Co.,* 159 N. C., 121. In *Green v. Grocery Co., supra,* it appeared that the proper custody of the writing desired was without the jurisdiction of the court and in Richmond, Virginia, but that no sufficient search had been made in Richmond, at the proper place, for it, and the evidence was held incompetent, citing *Blair v. Brown,* 116 N. C., 631; *Avery v. Stewart, supra; Justice v. Luther,* 94 N. C., 793. In *Byrd v. Collins,* 159 N. C., 641, the same doctrine is set forth in a quotation from 3 Redfield on Wills, page 15: "But it must in all cases be shown that an exhaustive search has been made for such missing will in all places where there is the remotest possibility that it could be

found, before any secondary evidence can be received of its contents." Of course, this doctrine must be interpreted in the light of the character of the written instrument in each particular case, and the exhaustiveness of the search must be interpreted in practice in reference to the character of the papers sought; hence it is not easy to define the degree of diligence in the search that is necessary, for each case depends much on its particular circumstances; but, in general, as stated in this latter case, a party is expected to show that he has, in good faith, exhausted in a reasonable degree all sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him. This doctrine is taken from 1 Greenleaf Ev., sec. 558. The same rule is announced in *Thompson v. Lumber Co.,* 168 N. C., 226.

In *Sermons v. Allen,* 184 N. C., 127, the Court announces the same rule, and, upon authority of *Beard v. R. R., supra,* holds, with reference to the notice to produce, and its timeliness, that, "generally, if the party dwells in another town than that in which the trial is had, a service on him (to produce papers) at the place where the trial is had, or after he has left home to attend the court, is not sufficient."

This rule also shows that the reasonableness of all the requirements is a necessary test.

The defendant also excepted to the introduction of letters received in reply to letters written to the defendant, Fielden Osborne, properly addressed and put in the mail, with the requisite amount of postage thereon, and the replies received in due course of mail, purporting to be in reply to the letters so written; and, in fact, the replies were written on the backs of the letters themselves.

This evidence has been held competent in *Echerd v. Viele,* 164 N. C., 122, wherein the Court says: "A letter received in due course of mail, purporting to be written by a person in answer to another letter, proved to have been sent him, is prima facie genuine, and is admissible in evidence without proof of the handwriting or other proof of its authenticity."

It therefore appears that the plaintiffs did not bring themselves within any of the provisions whereby secondary evidence of the contents of the letters to Fielden Osborne, about which the witness, Tucker, testified, may be given, and inasmuch as this evidence appeared to be relevant and material to the contested issue, we are constrained to hold that the admission of parol evidence as to the contents of such letters was prejudicial error. The matters in the other exceptions may not present themselves at another trial, and it is therefore unnecessary to discuss them.

For the reasons herein set forth, let there be a

New trial.