AMERICAN NATIONAL BANK v. J. G. BRICKHOUSE AND E. P. COHOON.

(Filed 23 February, 1927.)

1. **Evidence—Letters—Proof Required—Primary and Secondary Evidence.**

  Letters offered as evidence upon matters directly relating to questions in controversy and not collateral thereto, must be sufficiently identified as genuine, and where the letter itself is not produced, its absence or loss must be sufficiently accounted for to admit evidence of its contents.

2. **Same—Hearsay—Bills and Notes—Negotiable Instruments—Notice of Infirmity of Instrument.**

  Where a bank claims a negotiable instrument as holder in due course for value, without notice of its infirmity, a letter purporting to have been written by the president of the bank showing notice of the infirmity alleged in defense of its action thereon, is incompetent as hearsay in the absence of evidence of its genuineness.

CIVIL ACTION, tried before *Nunn, J.,* at November Term, 1926, of TYRRELL.

The evidence disclosed that on 11 November, 1920, the defendant Brickhouse executed his promissory note for $750, payable "to the order of myself, . . . value received and without offset," and said note was duly endorsed by said defendant Brickhouse on the back thereof. On 11 November, 1920, the defendant Cohoon executed a promissory note for $500, payable "to the order of myself, . . . value received and without offset," and on the same date said defendant Cohoon issued his promissory note for $750 in the same language as the note above referred to and duly endorsed the same on the back thereof. All of these notes were delivered to the Phos-Pho Germ Manufacturing Corporation in payment of purchase price for certain stock of said corporation. These notes were taken by the Phos-Pho Germ Corporation to the plaintiff American National Bank, and hypothecated with the plaintiff as collateral security for a line of credit advanced by plaintiff to the Phos-Pho Germ Manufacturing Corporation. The Phos-Pho Germ Manufacturing Corporation had become insolvent and the plaintiff contends that there is $7,264.64 due by the Phos-Pho Germ Manufacturing Corporation to it upon the line of credit for which the notes in controversy were pledged as security.

The evidence of defendants tended to show that the notes were secured by means of fraud and fraudulent representation made by the agents of the Phos-Pho Germ Manufacturing Corporation in a stock-selling scheme, and that said notes were executed and delivered by the defendants to the agent of the Phos-Pho Germ Manufacturing Corporation for the purchase price of stock in said corporation. That at the time said notes were issued by the defendants, the agent of the Phos-Pho

Germ Manufacturing Corporation represented that said company was a going concern, had paid large dividends, and the company had a large quantity of fertilizer on hand, and that they had factories in Richmond and a large quantity of manufactured fertilizer ready for shipment at New Bern. That all of these representations were false, and that the defendants relied upon said representations.

The defendants further allege that Phos-Pho Germ Manufacturing Corporation had not complied with the Blue-Sky Law and that Mr. O. J. Sands, president of the plaintiff bank, was director in the Phos-Pho Germ Manufacturing Corporation, and that the plaintiff bank was not the purchaser of said notes in due course and without notice.

The issues and answers of the jury thereto were as follows:

1. Did defendants execute the notes sued on in this action, as alleged in the complaint? Answer: Yes.

2. Were defendants induced to execute said notes by fraud and misrepresentation on the part of Phos-Pho Germ Company, as alleged by defendants? Answer: Yes.

3. Did plaintiff American National Bank take said notes for value before their maturity and without knowledge of such fraud, as alleged? Answer: No.

4. What amount is due on the J. G. Brickhouse notes? Answer: Nothing.

5. What amount is due on the E. P. Cohoon notes? Answer: Nothing.

From the judgment upon the verdict plaintiff appealed.

*W. L. Whitley for plaintiff.*
*Thompson & Wilson for defendant.*

BROGDEN, J. Exceptions eight and twelve present this question: Can a witness testify as to the contents of a letter received by him without proof of the genuineness of the original letter and without evidence as to the loss thereof?

It is a general rule of evidence that the best evidence which the nature of the case admits of must be produced. When the nonproduction of the best evidence is properly accounted for, then the next best evidence in the party's power is required. But before secondary evidence of the contents of a letter can be given in evidence, the letter itself must be properly identified by proof of the signature, and if the letter has been lost, the loss must be properly shown before evidence of the contents thereof is admissible. *Dumas v. Powell,* 14 N. C., 104; *Smith v. R. R.,* 68 N. C., 107; *Gillis v. R. R.,* 108 N. C., 441; *Avery v. Stewart,* 134 N. C., 287; *Arndt v. Ins. Co.,* 176 N. C., 652; *Mahoney v. Osborne,* 189 N. C., 445.

In the case now under consideration, the record shows the following facts: The defendant Cohoon testified that the agent of the Phos-Pho Germ Manufacturing Corporation "had a letter from Mr. Sands, signed by Mr. Sands. (Question by the court): All you know is that it purported to be from Mr. Sands? Answer: Yes, sir; and written on a letterhead, written by Mr. Sands, president of the bank. (By the court): Did his name appear on the printed stationery? Answer: Yes, sir. With a great many of the other bank associates? Answer: He told me that some other concern which did a big trunk and box business, who were stockholders in this business, and had a letter from them, saying what a success it was, and what a wonderful investment it was, and what a wonderful product they had, surpassing all other fertilizers in making crop yields." In the charge to the jury the court referred to the letter as follows: "And that he showed him, or offered evidence to show, that he is also an officer in the Phos-Pho Germ Manufacturing Corporation."

The witness did not testify that he knew the handwriting of Mr. Sands, and there was no evidence whatever to identify the letter. Without such proof the letter was inadmissible. Even if the letter had been genuine and properly identified and proven, the best evidence of its contents would have been the letter itself, and certainly, in the absence of evidence that the letter had been lost or misplaced by the witness, the contents thereof were inadmissible. Then, too, the contents of letters would have been clearly incompetent as hearsay. *Arndt v. Ins. Co.,* 176 N. C., 652; *Mahoney v. Osborne, supra; Bixler v. Britton,* 192 N. C., 199.

These letters related to matters in issue and were not collateral to the question in controversy.

There are other exceptions in the record, but, as a new trial must be awarded for the error specified, it is therefore unnecessary to discuss these exceptions.

New trial.