## STATE v. GEORGE B. MOORE.

(Filed 21 September, 1966.)

1. **Criminal Law § 24—**

A plea of not guilty by reason of temporary insanity is not a judicial admission that the defendant committed any unlawful act, and the burden remains upon the State to prove defendant's guilt of all elements of the offense charged.

2. **Criminal Law § 62—**

A lay witness, from observation, may form an opinion as to a person's mental condition and testify thereto before the jury.

3. **Same—**

The State's witness testified to the effect that defendant, in an intoxicated condition, lay down on a couch for about ten minutes and remained motionless, apparently asleep or passed out on the couch, at a time when an African wildlife program was showing on a television in the room, that defendant suddenly raised up from the couch with a shotgun in his hands and said, "Don't nobody crowd me, the first one that does, I will down him." *Held:* It was prejudicial error to exclude the question asked on cross-examination, pertinent to defendant's plea of temporary insanity, as to whether defendant at that time was not acting like a man out of his right mind.

4. **Criminal Law § 109—**

An additional instruction to the effect that defendant had pleaded not guilty by reason of insanity and that the court charged the jury that defendant had the duty of satisfying the jury of this defense, and that there had been no legal competent evidence of insanity offered by defendant in the cause, must be held for prejudicial error as permitting the jury to decide the question of defendant's guilt solely upon whether he had proved his insanity.

APPEAL by defendant from *Nettles, E.J.,* June, 1966 Mixed Session, POLK Superior Court.

In this criminal prosecution the defendant, George B. Moore, was indicted for murder in the first degree for the killing of Winford Agner. When arraigned, the defendant entered a plea of "not guilty by reason of temporary insanity." The Solicitor announced he would only ask for a verdict of murder in the second degree or manslaughter.

The State's witness, Stanley Jones, testified he was at the home of the defendant Moore in the early evening of January 11, 1965. Moore and the deceased, Winford Agner, had worked together that day, "putting down linoleum in Moore's house." They prepared and ate supper together. "I hung around and talked with them and messed with the television. . . . I think they took a drink while I was there, so George was pretty full and he talked pretty wild . . . he was in the process of moving and he showed me what he had to move, and after he had . . . left the table, walked by me and laid down across the bunk . . . He said, 'I believe I will go home.' . . . And he said, 'By the way, I am already at my home anyhow.' " For about ten minutes the defendant remained motionless, apparently asleep or passed out on the couch. At the time, the television was on, showing an African wildlife program. Suddenly the defendant raised up from the couch with a shotgun in his hand, saying, "Don't nobody crowd me. The first one that does, I will down him." The gun was pointed toward the cookstove. The witness and Agner were in the room, or Agner was in the act of entering. (Thereafter, the record does not say so, but it may be inferred from the defendant's hypothetical questions, his brief, and the preliminary statements in the record, that the gun fired and Agner was killed.)

Jones specifically testified that up to the time the defendant arose from the couch with the gun in his hand there had been no trouble, no dispute, no harsh words. "Everything was pleasant and enjoyable."

On cross-examination, the defense attorney asked the witness Jones this question: "When he got up from the couch with a gun and said these words, I will ask you if he wasn't acting like a man not in his right mind?" The court, upon the Solicitor's objection, refused to permit the witness to answer the question. The refusal is the subject of Exception and Assignment of Error No. 3. The couch was near the television set. The only evidence about the gun is its presence in Moore's hand when he arose from his sleep or stupor.

After the State rested, the defendant called two doctors who qualified as experts and in response to hypothetical questions would

have answered: "From the story given me . . . obviously this is a somnolence type of activity where a man awakens by a noise and at that time he is orientated in a condition . . . not knowing what he is doing and he may act or do anything without consciously knowing what he is doing. . . . I would say he did not know what he was doing, what was wrong." "A television program which has sounds or scenes of violence may cause a person in deep sleep—any external stimuli can cause a reaction. . . . He does not know where he is or what he is doing and also usually he has either acts of activity or violent behavior."

The defendant was not permitted to present the medical evidence to the jury. However, it must be said the form of the hypothetical question left something to be desired.

The court submitted the case to the jury which recessed for the night without arriving at a verdict. Next morning the court gave this further instruction:

"Members of the Jury something has been said in this case with respect to insanity. In fact the defendant entered a plea of not guilty by reason of insanity. The Court charges you that the law presumes every man to be sane and when the plea of insanity is interposed, then the defendant has the duty of going forward with the evidence and satisfying the Jury. It rests upon the defendant to satisfy you that he was not guilty by reason of insanity and satisfy you from the evidence either offered for him or against him of that condition, that is of insanity. The Court charges you there has been no legal competent evidence of insanity offered by the defendant in this case."

The jury found the defendant guilty of manslaughter. From a judgment of imprisonment for not less than six years nor more than 10 years, he appealed.

*T. W. Bruton, Attorney General, Andrew A. Vanore, Jr., Staff Attorney for the State.*
*Christ Christ for defendant appellant.*

HIGGINS, J. The plea of not guilty by reason of temporary insanity is not a judicial admission that the defendant committed any unlawful act. Under a plea of not guilty the State must prove all elements of the offense charged. *State v. Cephus,* 239 N.C. 521, 80 S.E. 2d 147; *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232; *State v. DeGraffenreid,* 223 N.C. 461, 27 S.E. 2d 130.

After the State's witness Jones had described the defendant's acts and conduct immediately before he arose from the couch with the

gun, he should have been permitted to say whether the defendant acted like a man not in his right mind. The State was attempting to make out its case by his testimony as to what the defendant did and said. He formed an opinion as to defendant's mental state. The defendant was entitled to have the jury consider it. A lay witness, from observation, may form an opinion as to one's mental condition and testify thereto before the jury. *White v. Hines,* 182 N.C. 275, 109 S.E. 31. Conceding the hypothetical questions were somewhat technically objectionable, there was enough of unusual and strange conduct shown by the witness Jones to raise the question whether the defendant had sufficient understanding to render his acts felonious. The court committed error in refusing to permit Jones to express his opinion. Assignment of Error No. 3 is sustained.

The additional charge given to the jurors after they had been unable to agree may well have been understood by them to mean that the only issue before them was whether the defendant had proved his insanity. On that issue the court further charged he has offered no competent evidence. Prior to the charge the jury had been unable to agree. Thereafter the guilty verdict was rendered. The jury may have decided the defendant's guilt solely upon the question whether he had proved his insanity.

For the reasons herein stated, the defendant is entitled to a new trial, and it is so ordered.

New trial.