STATE OF NORTH CAROLINA v. STERLING BOONE

No. 15

(Filed 7 April 1981)

1. Criminal Law § 81— medical discharge from army — witness's testimony properly excluded

In a prosecution for armed robbery and kidnapping where defendant pled not guilty by reason of insanity, the trial court did not err in excluding testimony by defendant's father concerning defendant's discharge from the army and the nature of his discharge, since the father was testifying with respect to a letter which arrived at defendant's home; the father testified that he could not read well and that someone had read the letter to him; the father was therefore not in a position to testify about the letter and its contents; the writing itself was the best evidence of its contents and it was subsequently admitted into evidence; and the evidence of defendant's "medical discharge" which he complained was excluded

was in fact admitted.

### 2. Criminal Law § 169— testimony not permitted at trial — failure of record to include excluded evidence

In a prosecution for armed robbery and kidnapping where defendant pled not guilty by reason of insanity, any error of the trial court in refusing to allow defendant's father to testify about his observations of defendant's acts in the past year was waived by defendant's failure to include the witness's answers in the record on appeal.

### 3. Criminal Law § 63.1— mental capacity — lay opinion admissible

The trial court did not err in allowing the district attorney to ask defendant's father his opinion as to whether defendant knew right from wrong and the father's answer that "at times he knew the difference between right and wrong" was properly admitted, since lay opinion may be received concerning the mental capacity of a defendant in a criminal case.

### 4. Criminal Law § 63.1— defendant's irrational behavior — exclusion of evidence not prejudicial error

In a criminal prosecution where defendant pled the defense of insanity, a deputy sheriff who testified that defendant started a fire in the mattress in his cell and waved his arms across the fire should also have been allowed to testify that defendant "was totally unaware of what he was doing," since opinion evidence by lay witnesses and lay testimony reciting irrational acts prior to or subsequent to the alleged offense is allowed in this State, and the deputy should have been permitted to give his opinion of defendant's mental state as well as relate the irrational act he observed; however, exclusion of the opinion by the trial judge was not prejudicial error since the admitted testimony by the deputy, defendant's family and his expert witnesses placed before the jury a complete history and description of defendant's mental condition.

### 5. Criminal Law § 52— hypothetical question — improper form

There was no merit to defendant's contention that the trial court erred in excluding the answers of defendant's psychiatric witness to his hypothetical questions and then allowing the State's expert witness to answer a hypothetical question on rebuttal, since defendant's hypothetical questions were properly excluded because of factual errors or unsupported hypotheses, while the district attorney's question contained no such errors.

### 6. Robbery § 5— instructions

Where the trial judge used the terms fact and element interchangeably in his jury charge and at one point stated that the crime of armed robbery was made up of seven separate facts, it would have aided clarity to say that the crime was made up of seven separate elements; however, no prejudice was shown and the jury clearly understood the elements required to find defendant guilty of armed robbery.

### 7. Criminal Law § 5.1— defense of insanity — last issue for jury

The trial court did not err in instructing the jury first to determine defend-

State v. Boone

ant's guilt or innocence of the crimes charged and then to reach the insanity issue only if it first found defendant guilty of the crimes.

**8. Kidnapping § 2— sentence determined by trial judge**

The jury finds whether the defendant committed a kidnapping as defined in G.S. 14-39(a), and the trial judge then pronounces sentence pursuant to G.S. 14-39(b); therefore, there was no merit to defendant's contention that the trial court erred in not allowing the jury to determine whether the mitigating circumstances set forth in G.S. 14-39(b) existed whereby the punishment for kidnapping could be reduced.

Justice EXUM dissenting.

APPEAL by defendant from *Godwin, J.,* at the 20 May 1980 Criminal Session. DURHAM Superior Court.

Defendant was convicted of armed robbery and kidnapping. Life sentences were imposed which he appeals to this Court pursuant to G.S. 7A-27(a).

On 26 September 1979, at approximately 4 a.m., defendant and another person entered a convenience store located just outside the Durham city limits. Defendant was wearing a stocking mask and carrying a handgun. He announced to the store attendant, Alfonza Jones, "This is a robbery. Open the cash register." Jones complied with the instruction. Defendant asked Jones to go to the cooler where beer and frozen products were kept. Jones complied. When they entered the cooler, defendant told Jones, "This is not cold enough." Jones was then locked in a storage room and told he would be killed if he tried to get out.

Defendant and his companion took money and food stamps from the store. As they left, they were confronted by an armed guard from a nearby car dealership. The security guard had observed the robbery taking place. Shots were exchanged between the guard and the two robbers. Defendant went to the storage room, kicked down the locked door, grabbed the store attendant and proceeded out of the store with the attendant in front of him with a gun pointed to his head. The other robber followed close behind defendant and his human shield. Defendant announced he was going to kill Jones. The security guard shot Jones in the right shoulder, causing Jones to fall to the ground, and then shot defendant in the head. As defendant fell to the ground, his gun discharged a bullet into the attendant's right hand. The other robber fled the scene and was subsequently captured. Defendant was taken to

Duke hospital and later moved to Central Prison Hospital. He was subsequently moved to Dorothea Dix Hospital for psychiatric examination. He was seen by Dr. John McCall, a psychologist, Dr. Milton Gipstein, a psychiatrist, both of whom were privately employed and testified for the defense at trial, and Dr. Billy W. Royal, a forensic psychiatrist, who testified for the State.

At trial, defendant pled not guilty by reason of insanity. His evidence in reliance upon this plea was based on testimony by his father, mother, sister, psychologist, psychiatrist and a jailer. The evidence to this effect and the State's rebuttal of it will be more fully discussed where it is pertinent to defendant's assignments of error.

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Special Deputy Attorney General, and Nonnie F. Midgette, Assistant Attorney General, for the State.*

*William A. Smith, Jr., attorney for defendant appellant.*

HUSKINS, Justice.

Defendant has grouped eight assignments of error and numerous underlying exceptions into one argument in which he contends the trial court erred in excluding evidence which tended to show he was legally insane at the time the crimes were committed. Defendant argues essentially seven different evidentiary rulings which we deal with *seriatim.*

[1] The trial court excluded testimony by defendant's father concerning defendant's discharge from the army and the nature of his discharge. This evidence was properly excluded. Defendant's father was testifying about defendant's Exhibit No. 2, a letter which arrived at his home. The father was apparently attempting to testify that the letter was a medical discharge letter. The father had already testified, "I can't read too good . . . . Someone read it to me." Obviously, this witness was not in a position to testify about the letter and its contents. The writing itself was the best evidence of its contents and it was subsequently admitted into evidence. *See generally Mahoney v. Osborne,* 189 N.C. 445, 127 S.E. 533 (1925). Thus, the evidence of defendant's "medical discharge" which defendant complains was excluded was in fact admitted.

[2] Defendant's father was also not allowed to testify about his observations of defendant's acts in the past year. The answers to

State v. Boone

these excluded questions were not included in the record on appeal. Any error is waived by this omission. *State v. Davis*, 282 N.C. 107, 191 S.E.2d 664 (1972); *State v. Fletcher*, 279 N.C. 85, 181 S.E.2d 405 (1971). In any event, evidence of defendant's behavior and mental state was admitted when defendant's mother and sister testified. Defendant has failed to show any prejudice.

[3] On cross-examination, the district attorney was allowed over objection to ask defendant's father his opinion whether defendant knew right from wrong. Defendant's father answered that "at times he knew the difference between right and wrong." This evidence was properly admitted. In this State, lay opinion may be received concerning the mental capacity of a defendant in a criminal case. *State v. Hammonds*, 290 N.C. 1, 224 S.E.2d 595 (1976); *State v. Potts*, 100 N.C. 457, 6 S.E. 657 (1888); *see generally* 1 Stansbury's N. C. Evidence § 127 (Brandis rev. 1973).

[4] Deputy Sheriff Maurice Hayes was called by defendant to testify about an incident involving defendant after his arrest in this case. Deputy Hayes testified defendant had started a fire in the mattress in his cell and when deputies arrived at the cell, they found defendant waving his arms across the fire. Deputy Hayes' statement that defendant "was totally unaware of what he was doing" was excluded by the trial court. This was error. Opinion evidence by lay witnesses and lay testimony reciting irrational acts prior or subsequent to the alleged offense is allowed in this State. *State v. Hammonds, supra; State v. Potts, supra.* The deputy should have been permitted to give his opinion of defendant's mental state as well as relate the irrational act he observed. However, under the circumstances of this case, we find the ruling of the trial judge was not prejudicial. The admitted testimony by Deputy Hayes, defendant's family and his expert witnesses placed before the jury a complete history and description of defendant's mental condition. We are unable to discern any real prejudice to defendant resulting from the exclusion of this one statement. *Compáre State v. Bundridge*, 294 N.C. 45, 239 S.E.2d 811 (1978).

[5] Defendant contends the most damaging error by the trial court was the exclusion of Dr. Gipstein's answers to his hypothetical questions, and then allowing the State's expert witness to answer a hypothetical question on rebuttal. Dr. Gipstein's excluded opinion, which was preserved in the record, is as follows:

Confining my consideration to only the facts as you posed them to me in your hypothetical, I can say that the defendant might or could have been laboring under a mental illness at the time of the crime and might or could have not known the nature and quality of his acts. And even if he did understand the nature and quality of his acts, he might not have known they were wrong.

The State's expert, Dr. Billy W. Royal, was allowed to testify that "I think assuming all those comments that you made I would assume the person was aware of his actions at that time.... Yes, I think that a person who did that would know the difference between right and wrong." Our examination and analysis of the hypothetical questions reveal that defendant's questions were properly excluded because of factual errors or unsupported hypotheses while the district attorney's question contains no such errors.

When the relevant facts are not within the personal knowledge of the expert witness, they must, as a general rule, be testified to by other witnesses and then incorporated in a hypothetical question addressed to the expert. Where an expert witness has personal knowledge of some of the facts of the case, he may base his opinion partly on his personal observation or knowledge and partly on the factual evidence of other witnesses presented to him hypothetically. *State v. Hensley*, 294 N.C. 231, 240 S.E.2d 332 (1978). The hypothetical question should include only those facts supported by the evidence already introduced or those facts which a jury might logically infer from the evidence. The question should not contain repetitious, slanted or argumentative words or phrases. *State v. Taylor*, 290 N.C. 220, 226 S.E.2d 23 (1976); *see generally* 1 Stansbury's N. C. Evidence § 137 (Brandis rev. 1973). The trial court in applying these rules of evidence properly sustained the objection to the hypothetical questions asked of defendant's expert psychiatrist.

Defendant twice posed a hypothetical question to Dr. Gipstein, which the doctor was not allowed to answer. Nothing would be served by quoting the questions in full in this opinion. Defendant in his brief concedes misstatements of fact in both questions. In the first hypothetical, Dr. Gipstein was asked to assume as fact "that Dr. McCall performed several psychological tests that revealed that the defendant suffered from simple schizophrenia; ... that because of his lack of ego strength and severe schizophrenia, he does not have the capacity to distinguish right from wrong ...." Dr.

State v. Boone

McCall had in fact testified he did *not know* whether defendant knew the difference between right and wrong. Further, the jury could not logically infer this fact from the testimony of Dr. McCall. In fact, defendant makes a somewhat contradictory argument elsewhere in his brief that it was prejudicial error for the district attorney to attempt to elicit from Dr. McCall this very evidentiary fact. Defendant in that argument notes what the record reveals: Dr. McCall was not tendered for the purpose of giving an opinion on whether defendant knew right from wrong nor did he offer such an opinion. Objection to the question was properly sustained since it contained facts neither supported by nor logically inferred from the evidence.

The second hypothetical was a mere rephrasing of the original question and contains similar fatal defects. In the second question, as defendant concedes, there was a misstatement of the sequence of events in the robbery in question. Because of these errors in fact, the witness could not give an intelligent opinion on the mental capacity of defendant. It is not necessary that irrelevant facts be included in a hypothetical question, nor is it necessary that the relevant facts in evidence be repeated verbatim. *State v. Taylor, supra.* But in this case, the hypothetical questions required assumption of facts neither in evidence nor logically inferred therefrom. The objections were properly sustained.

By way of contrast, the hypothetical question asked of the State's expert witness on rebuttal lacks this flaw. Objection to that hypothetical question was properly overruled. It appears defendant's witness was qualified to answer a proper hypothetical question. The problem in this case involves the improper form of that question. *Contrast State v. Wade*, 296 N.C. 454, 251 S.E.2d 407 (1979); *see generally* 1 Stansbury's N. C. Evidence § 137 (Brandis rev. 1973).

In his second argument, defendant has grouped and brought forward three alleged errors in the instructions of the trial court to the jury. We find the questioned instructions to be free of prejudicial error.

[6]    In his charge to the jury on the crime of armed robbery, the judge used the terms *fact* and *element* interchangeably. For example, the judge stated "the crime of armed robbery is made up of seven separate *facts*." It would aid clarity to say that the crime is

made up of seven separate *elements*. However, no prejudice is shown. When the charge is construed as a whole, it is free of error on this point. The jury clearly understood the elements required to find defendant guilty of armed robbery. *See State v. Slade*, 291 N.C. 275, 229 S.E.2d 921 (1976).

[7]   Defendant also contends prejudicial error was committed in the instruction, submission and determination of the issue whether defendant was "not guilty by reason of insanity." The trial judge told the jury to consider first whether the State had met its burden of proving all of the elements of the crimes because it might be unnecessary to reach the question of sanity. He instructed the jury to consider the question of sanity once it determined defendant was guilty of the charged crimes. The issues submitted to the jury were (1) "does the jury find the defendant, Sterling Boone, guilty of kidnapping or not guilty by reason of insanity?" and (2) "does the jury find the defendant, Sterling Boone, guilty of robbery with a dangerous weapon or not guilty by reason of insanity?" The jury returned verdicts of guilty of both crimes. We see no error in this procedure. The trial judge's instruction follows procedural guidance outlined in *State v. Linville*, 300 N.C. 135, 265 S.E.2d 150 (1980). The basic guidance given by that decision is that the jury should establish defendant's guilt or innocence of the crime first and reach the insanity issue only if it first found defendant guilty of the crime. This procedure was followed by the trial court in the present case.

[8]   Defendant argues error in the kidnapping charge in that the jury was not allowed to determine whether the mitigating circumstances set forth in G.S. 14-39(b) existed whereby the punishment for kidnapping could be reduced. He contends a jury finding is required on whether the kidnapping victim suffered a serious injury. This same reasoning is the basis of his final argument which deals with the judgment of life imprisonment imposed for the kidnapping offense. Defendant's argument was rejected in dicta in *State v. Williams*, 295 N.C. 655, 669-79, 249 S.E.2d 709, 719-25 (1978). In *Williams*, we said:

> Normally, a jury need only determine whether a defendant has committed the substantive offense of kidnapping as defined in G.S. 14-39(a). The factors set forth in subsection (b) relate only to sentencing; therefore, their existence or nonexistence should properly be determined by the trial judge.

State v. Boone

295 N.C. at 669, 249 S.E.2d at 719. We adhere to that reasoning in this case. The jury finds whether the defendant committed a kidnapping as defined in G.S. 14-39(a). The trial judge then pronounces sentence pursuant to G.S. 14-39(b). The life sentence was properly imposed.

No error..

Justice EXUM dissenting.

Because I believe the trial judge erroneously sustained the state's objection to the psychiatric opinion of defense witness Dr. Milton Gipstein, and that the error was prejudicial, I respectfully dissent from the contrary decision of the majority and vote for a new trial.

The only defense offered in this case was insanity. In an effort to prove this defense defendant offered the testimony of his father, mother, and sister. He also offered the testimony of Dr. John McCall, a clinical psychologist, who tested defendant and diagnosed him as a schizophrenic. He attempted to offer the testimony of Dr. Gipstein, a psychiatrist employed by the North Carolina Department of Correction, who, if permitted, would have testified in response to a hypothetical question that at the time of the crime "defendant might or could have been laboring under a mental illness . . . and might or could have not known the nature and quality of his acts. And even if he did understand the nature and quality of his acts, he might not have known they were wrong."

The state successfully objected to the question. Yet it was permitted later in the trial to offer the opinion of psychiatrist Dr. Billy Royal by way of a hypothetical question similar to the one used by defendant to the effect that defendant did not suffer from a mental disease or defect at the time of the crime.

Apparently the trial court sustained the state's objection to the question asked of Dr. Milton Gipstein because defendant somehow improperly phrased the hypothetical question. A majority of this Court finds no error in this ruling because the question contains "a misstatement of the sequence of events in the robbery in question."

Defendant asked two hypothetical question of Dr. Gipstein. I agree with the majority's conclusion that the first question improperly characterized Dr. McCall's opinion. Therefore the state's objec-

tion was properly sustained to it.

I can find nothing wrong, however, with the second hypothetical question put to Dr. Gipstein. The question occupies some three pages in the record. Approximately 18 lines are concerned with the sequence of events at the robbery. The most significant aspect of the question includes hypothetical facts dealing with: (1) defendant's boyhood and family background; (2) anti-psychotic medication taken by the defendant; (3) his actions at Duke Medical Center where he was taken after the robbbery; and (4) the results of the testing performed on him by Dr. McCall, a psychologist. Furthermore, Dr. Gipstein testified that he personally examined the defendant in jail after the crime for approximately two hours on one occasion and three and one-half hours on another. He had reviewed copies of defendant's medical records at Duke Medical Center, the police report of the robbery, the psychological testing report performed by Dr. McCall, Dr. Royal's report, and had interviewed defendant's family members.

It seems clear to me that the sequence of events at the robbery had nothing to do with Dr. Gipstein's professional opinion of defendant's sanity, even if this sequence was put to him slightly out of order. My examination of the hypothetical statement of what happened in the robbery indicates that it does not vary materially from the facts presented in the state's evidence. That portion of the hypothethical question dealing with the robbery was as follows:

> "[T]hat early in the morning of the 26th of September, 1979, he and one other went into the Li'l General Store and he held a gun on the clerk, demanded money and later he took the clerk to a cooler and then from the cooler to a storage room, and the storage room door was subsequently locked; that he and the other person identified by the name of Bullock, left the store and when they got outside, a shot was fired at them by a security officer; that shots were exchanged by Mr. Bullock and the security officer, that he took the clerk from the storage room and he went outside holding the clerk by the seat of the pants, and holding a gun against him, where subsequently the clerk was shot and the defendant was shot."

Later defendant's counsel corrected this aspect of the question by saying, "that the defendant and the defendant Bullock were in the

process of leaving the store or were in the store and a shot was fired by a witness by the name of Mr. Buchanan, a security officer."

The essential requirement of a hypothetical question is that it be "sufficiently explicit for the witness to give an intelligent and safe opinion." *State v. Dilliard*, 223 N.C. 446, 448, 27 S.E. 2d 85, 87 (1943). This Court recently put the rules governing hypothetical questions as follows, *Dean v. Coach Co.*, 287 N.C. 515, 518, 215 S.E. 2d 89, 91-92 (1975):

> "As a general rule, a hypothetical question which omits any reference to a fact which goes to the essence of the case and therefore presents a state of facts so incomplete that an opinion based on it would be obviously unreliable is improper, and the expert witness's answer will be excluded. (Citations omitted.) However, there is substantial authority to the effect that the interrogator may form his hypothetical question on any theory which can be deduced from the evidence and select as a predicate therefor such facts as the evidence reasonably tends to prove."

The hypothetical question put in this case to Dr. Gipstein was fully sufficient in form and content under the rule cited to permit the witness to give an intelligent, safe and reliable opinion.

Furthermore, since Dr. Gipstein had personally examined defendant, reviewed his medical and psychological records, the police report of the crime, and had interviewed defendant's family, he, in fact, had personal knowledge of all of the matters contained in the hypothetical question and could have been permitted to express his opinion based on this personal knowledge without the use of a hypothetical. *State v. Taylor*, 290 N.C. 220, 226 S.E. 2d 23 (1976); *State v. Griffin*, 288 N.C. 437, 219 S.E. 2d 48 (1975), *death sentence vacated*, 428 U.S. 904 (1976) (psychiatric expert's opinion based on examination of defendant); *State v. Holton*, 284 N.C. 391, 200 S.E. 2d 612 (1973). When an expert witness's opinion is, in fact, based on personal knowledge, defects in the form of the hypothetical do not render his opinion inadmissible. *Price v. Gray*, 246 N.C. 162, 97 S.E. 2d 844 (1957). It is clear from the record that Dr. Gipstein's opinion was in fact based on his own personal knowledge acquired from his own investigation of the defendant and the crime.

In conclusion, I believe the hypothetical question was proper in form and substance. Even if there was a misstatement of the sequence of events at the robbery, which I do not detect, the mistake was not material. Finally it seems clear that Dr. Gipstein was in fact testifying from his own knowledge gained from his personal examination of defendant and investigation of the crime so that any defect in the form of the hypothetical should not have rendered his opinion inadmissible. The trial court's ruling to the contrary deprived defendant of the most credible evidence available to him that he was insane. For error in the ruling, I believe defendant is entitled to a new trial.