STATE OF NORTH CAROLINA v. WILLIAM KELLY STRICKLAND

No. 569A86

(Filed 5 November 1987)

1. **Constitutional Law § 63— death qualified jury—constitutional**

The trial court did not err in a prosecution for murder, kidnapping, and discharging a firearm into an occupied motor vehicle by death qualifying the jury.

2. **Criminal Law § 63.1— mental capacity of defendant—lay opinion admissible**

The trial court did not err in a prosecution for murder, kidnapping, and discharging a firearm into an occupied vehicle by allowing the State to ask defendant's estranged wife whether defendant knew the difference between right and wrong on the date of the killing. Lay opinion concerning the mental capacity of a defendant in a criminal case is admissible; however, assuming error, there was no prejudice because defense counsel asked on cross-examination whether the witness had told defendant's sisters that defendant had run around his yard naked and urinated on trees like a dog, whether defendant had been in a mental hospital, whether he awakened his family at night to go

"bird blinding," whether he drove his truck down the road at excessive speeds with the doors open and his family inside, and whether he had injured his head during a motorcycle accident. Defense counsel also asked another witness whether defendant was in his right state of mind at some point prior to the killing and whether he had a reputation in the community for being crazy. N.C.G.S. § 8C-1, Rule 701.

**3. Criminal Law § 64— lay opinion that defendant intoxicated—no error**

The trial court did not err in a prosecution for murder, kidnapping and discharging a firearm into an occupied vehicle by allowing the State to ask defendant's companion whether defendant was intoxicated on the night of the murder where the companion had had an opportunity to observe defendant.

**4. Criminal Law § 65— testimony that companion believed defendant's threat— admissible**

In a prosecution for murder, kidnapping, and discharging a firearm into an occupied vehicle, testimony by defendant's companion on the night of the murder that he believed defendant's statement that defendant would get him next if he told anybody because the companion felt that if defendant "knocked off" a lady, he would knock off a man was not prejudicial in the context of the witness's prior testimony detailing defendant's offenses. N.C.G.S. § 8C-1, Rule 602, N.C.G.S. § 8C-1, Rule 701, N.C.G.S. § 15A-1443(a).

**5. Criminal Law § 63— defendant's sanity—opinion of companion**

The trial court did not err in a prosecution for murder, kidnapping and discharging a firearm into an occupied vehicle by allowing the prosecutor to ask defendant's companion on the night of the shooting whether defendant was in his right mind and knew the difference between right and wrong or in allowing the witness's answers that defendant had been the same since he had known him and that defendant would have shot him if he had been out of his mind. The witness clearly had an opportunity to form an opinion as to defendant's mental capacity. N.C.G.S. § 8C-1, Rule 701.

**6. Criminal Law § 89.10— impeachment of witness—prior assaults**

The trial court in a prosecution for kidnapping, murder, and discharging a firearm into an occupied vehicle did not err by refusing to allow defendant to cross-examine his companion on the night of the murder about certain assaults the companion had allegedly committed. N.C.G.S. § 8C-1, Rule 608(b).

**7. Kidnapping § 1.2— unlawful confinement—evidence sufficient**

The trial court did not err by not dismissing a kidnapping charge at the close of all the evidence where the evidence showed that defendant shot at the victim's car several times, got into the car and slapped her twice, and the car then pulled down a dirt road. Viewed in the light most favorable to the State, there was evidence which permitted a reasonable inference that defendant unlawfully confined the victim in the car. N.C.G.S. § 14-39 (1986).

**8. Criminal Law § 63— failure to instruct on insanity—no error**

The trial court did not err in a prosecution for murder, kidnapping, and discharging a weapon into an occupied vehicle by not charging the jury on the

defense of insanity where the evidence showed that defendant's behavior was often antisocial and unacceptable, but did not support defendant's contention that he was incapable of knowing the nature and quality of his actions or of distinguishing right from wrong in relation to those actions.

**9. Homicide § 28.6— murder—defense of intoxication—refusal to instruct—no error**

    The trial court did not err in a first degree murder prosecution by refusing to instruct on voluntary intoxication and to submit the possible verdict of second degree murder on the basis that voluntary intoxication negated the specific intent necessary for first degree murder where the evidence showed only that defendant had had two drinks earlier in the evening and was insufficient to show that he was incapable of forming the intent necessary for first degree murder.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) (1986) from the imposition of a sentence of life imprisonment upon his conviction of first degree murder before *Small, J.,* at the 27 May 1986 Criminal Session of Superior Court, WAYNE County. On 24 February 1987 we allowed defendant's petition to bypass the Court of Appeals in appeals from convictions of kidnapping, for which the trial court sentenced defendant to forty years imprisonment, and discharging a firearm into an occupied motor vehicle, for which the trial court sentenced defendant to ten years imprisonment. Heard in the Supreme Court 12 October 1987.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*R. Gene Braswell, S. Reed Warren, and Glenn Alton Barfield for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of first degree murder, kidnapping, and discharging a firearm into an occupied motor vehicle. He was sentenced to life imprisonment for the murder, forty years (consecutive) for the kidnapping, and ten years (consecutive) for firing into the motor vehicle. We find no error.

The State's evidence, in pertinent summary, showed the following:

Defendant and his wife, Myra Strickland, were separated. On 9 July 1985, Bishop Edith H. Dickerson, Ms. Strickland's minister, picked her up from her mother's house in Wilson and drove her to

church in Rocky Mount for the evening service. After the service, at about 10:00 p.m., Bishop Dickerson and Ms. Strickland left the church. They saw defendant's car parked across the street with defendant sitting inside. Robert Bayman, defendant's friend, was walking down the street. The women drove behind defendant's car, then went back to the church. While Ms. Strickland called the police, defendant walked up to the church and Bishop Dickerson met him at the door. Defendant told her that he had heard that she was a lesbian and that he would "get [her]." He left when she refused to let him in the church. The two women then left and drove to Wilson. On their way, defendant's car passed them. Bayman was driving and defendant was in the passenger seat. Bishop Dickerson dropped Ms. Strickland off at her mother's home between 10:30 and 10:45 p.m.

Defendant had asked Bayman to drive him to Rocky Mount that evening to see a girlfriend. They met at a bootlegger's house, where they each had one drink. Bayman testified that defendant was not drunk at that time. Bayman and defendant then drove to another house, where they had a second drink. While there, defendant shot a pistol several times between his legs and over his shoulder. They left at about 8:30 p.m.

When they arrived in Rocky Mount, they stopped at a place where defendant said he was going to visit a woman. Defendant walked off. After a few minutes he rushed back to Bayman, telling him to run. They drove to a gas station, where defendant asked Bayman to hide the car and wait. Defendant pointed a gun at Bayman, telling him to get out of the car because he was going to kill someone. When Bayman refused to get out, defendant ordered him to follow a car that had passed. He followed this car, which was Bishop Dickerson's, to Ms. Strickland's mother's house. Ms. Strickland got out and Bishop Dickerson drove away. Bayman continued to follow her car. After several miles, defendant asked Bayman to pull up beside her car. Defendant aimed a gun out of his window, telling Bishop Dickerson to stop. The cars jostled for position on the road, during which time defendant fired several shots at Bishop Dickerson's car and threatened Bayman with the gun.

When Bishop Dickerson stopped her car, defendant got inside and slapped her twice. Her car then pulled down a dirt road. Bay-

man followed in defendant's car. When Bayman drove around a curve in the road, he saw Bishop Dickerson's car in some trees. He saw defendant get out of the car and empty shells from his gun into his hand. Defendant stated, "She is dead now." Bayman said, "[M]an, you didn't kill that lady." Defendant answered, "[Y]es, I did." Bayman saw Bishop Dickerson in the car with a wound in her chest. She appeared to be dead. Bayman and defendant drove to a convenience store in Wilson. When police cars pulled up, defendant ran away.

An assistant medical examiner who performed an autopsy on Bishop Dickerson testified that a "bullet wound track" perforated the upper part of her heart and aorta, causing her to die from massive internal bleeding.

Although defendant did not call any witnesses at trial, he attempted to show, through cross-examination of the State's witnesses, that he was insane at the time of the offenses.

[1] Defendant first assigns as error the trial court's denial of his pretrial motion to prohibit the prosecutor from "death qualifying" the jury. Defendant contends that the court's "blanket" denial of this motion violated his right to trial by a jury composed of a representative cross-section of the community. He argues that the court should not have ruled on this motion until the State attempted to excuse particular prospective jurors because they were opposed to capital punishment, and that the court should have made an individual evaluation of each person to see if he or she would impose the death penalty.

Defendant's argument has no merit. The United States Supreme Court recently held that the federal constitution does not prohibit states from "death qualifying" juries in capital cases. *Lockhart v. McCree*, 476 U.S. ---, 90 L.Ed. 2d 137 (1986). We have held that the practice of "death qualifying" juries in capital cases violates neither the United States Constitution nor the North Carolina Constitution. *State v. Barts*, 316 N.C. 666, 343 S.E. 2d 828 (1986).

[2] Defendant further contends that the court erred by allowing the State to ask Myra Strickland whether defendant knew the difference between right and wrong during June 1985 and by allowing Ms. Strickland to answer. Defendant argues that the question

and answer have no probative value because, first, the terms "right and wrong" are relative, and, second, when a defendant raises the insanity defense, the proper question is not whether the defendant knew right from wrong generally, but whether he or she had the mental capacity "to distinguish between right and wrong at the time and in respect of the matter under investigation." *State v. Benton*, 276 N.C. 641, 652, 174 S.E. 2d 793, 800 (1970) (quoting *State v. Jones*, 229 N.C. 596, 598, 50 S.E. 2d 723, 724 (1948) ) (prosecutor not permitted to ask psychiatrist on cross-examination whether defendant knew the difference between right and wrong on the day of the killing).

We conclude that our decision in *State v. Boone*, 302 N.C. 561, 276 S.E. 2d 354 (1981), governs this case. In *Boone*, the district attorney asked the defendant's father on cross-examination whether defendant knew right from wrong. The father answered that "at times he knew the difference between right and wrong." We held that the trial court did not err in admitting the question and answer because lay opinion concerning the mental capacity of a defendant in a criminal case is admissible. *Id.* at 565, 276 S.E. 2d at 357. Similarly, the trial court in the present case did not err when it allowed the State to ask Ms. Strickland whether defendant knew the difference between right and wrong in June 1985 and when it allowed Ms. Strickland's affirmative response.

We note that the adoption of N.C.G.S. § 8C-1, Rule 701, did not effect a substantive change in the law regarding the admissibility of lay opinions of sanity. The witness here had first-hand knowledge regarding defendant's sanity and her opinion could have been helpful to the jury. *See State v. Davis*, 321 N.C. 52, 361 S.E. 2d 724 (1987).

Assuming, *arguendo*, that the trial court erred, the error was harmless. On cross-examination, defense counsel asked Ms. Strickland whether she had told defendant's sisters that defendant had run around his yard naked and urinated on trees like a dog, whether defendant had been in a mental hospital, whether he waked his family up at night to go "bird blinding," whether he drove his truck down the road at excessive speeds with the doors open and his family inside, and whether he had injured his head during a motorcycle accident. Further, defense counsel asked

Robert Bayman whether defendant was in "his right state of mind" at some point prior to the killing and whether he had a reputation in the community for being crazy. Some of the incidents about which defense counsel asked Bayman and Ms. Strickland allegedly occurred prior to June 1985, even months and years earlier. In light of these questions and the evidence elicited thereby, the question to Ms. Strickland of whether defendant knew right from wrong in June 1985, and her affirmative response, could not have prejudiced defendant. N.C.G.S. § 15A-1443(a).

Several of defendant's assignments of error address the direct and cross-examination of State's witness Robert Bayman.

[3] Defendant first complains that the court erred by allowing the State to ask Bayman whether, in his opinion, defendant was intoxicated on 9 July 1985. Defendant contends that the State did not lay a proper foundation for the admission of Bayman's opinion because the evidence at trial had not shown that Bayman had had an adequate opportunity to observe defendant before they left the bootlegger's house. In *State v. Dawson*, 228 N.C. 85, 88, 44 S.E. 2d 527, 529 (1947), we held that:

> A lay witness is competent to testify whether or not in his opinion a person was drunk or sober on a given occasion on which he observed him. The conditions under which the witness observed the person, and the opportunity to observe him, go to the weight, not the admissibility, of the testimony.

Bayman testified that he was with defendant at the bootlegger's house and saw defendant take a drink. Since Bayman had the opportunity to observe defendant, he was competent to give his opinion as to whether defendant was intoxicated at that time.

[4] During direct examination, Bayman testified that when he and defendant left the crime scene, defendant said, "[I]f you tell anybody . . . I am going to gets [sic] you next." When the prosecutor asked Bayman whether he believed defendant, Bayman replied, "I said, yes, I believe him because I felt like if he knocked a lady off he would knock a man off." Defendant contends that Bayman's statement was inadmissible under Rule 602 of the North Carolina Rules of Evidence because Bayman had no personal knowledge that defendant "knocked off" Bishop Dickerson; he had

not actually seen defendant kill her. He contends that the statement was also inadmissible under Rule 701 because Bayman's opinion was not "helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701 (1986).

Assuming, without deciding, that the admission of this evidence was error, we hold that the error was harmless. In the context of Bayman's prior testimony detailing defendant's offenses, his statement that defendant "knocked off" Bishop Dickerson could not have been prejudicial. N.C.G.S. § 15A-1443(a).

[5] Defendant further contends that the trial court erred by allowing the prosecutor to ask Bayman whether in his opinion, based upon what he saw defendant do from the time they pulled behind Bishop Dickerson's car until defendant ran from the convenience store, defendant was in his right mind and knew the difference between right and wrong. Defendant also contends that the court erred by allowing Bayman's replies that defendant was in his right mind "[b]ecause ever since I been knowing him, he was the same as he were then" and "because at the time that he aimed the gun at me, he would have shot me if he had been out of his head." Defendant argues that since Bayman applied the incorrect standard in forming an opinion as to whether defendant was "in his right mind," his testimony could not have been helpful to the determination of defendant's mental capacity, and that it thus should have been excluded under Rules 701(b), 402 (relevance) and 403 (probative value outweighed by danger of prejudice).

We hold that the court did not err. A lay witness may testify in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701 (1986). "A lay witness, from observation, may form an opinion as to one's mental condition and testify thereto before the jury." *State v. Moore*, 268 N.C. 124, 127, 150 S.E. 2d 47, 49 (1966); *see also State v. Brower*, 289 N.C. 644, 663, 224 S.E. 2d 551, 564 (1976). Bayman testified at trial that he had known defendant three to five years, and that he was with him several hours on 9 July 1985. Clearly, Bayman had the opportunity to form an opinion as to defendant's mental capacity. In *State v. Moore*, we held that the trial court erred by refusing to allow a

witness to answer defense counsel's question as to whether the defendant was acting like a man "not in his right mind." 268 N.C. at 127, 150 S.E. 2d at 49. Likewise, it would have been error not to allow Bayman to testify similarly here.

[6]   Neither do we find error in the trial court's refusal to allow defense counsel to cross-examine Bayman about certain assaults Bayman allegedly committed. Rule 608(b) states in part that:

> (b) *Specific instances of conduct.* — Specific instances of the conduct of a witness, for the purpose of attacking or support-ing his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the char-acter for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has tes-tified.

N.C.G.S. § 8C-1, Rule 608(b) (1986). In *State v. Morgan*, 315 N.C. 626, 635, 340 S.E. 2d 84, 90 (1986), we held that "extrinsic in-stances of assaultive behavior, standing alone, are not in any way probative of the witness' character for truthfulness or untruth-fulness," and therefore are inadmissible under Rule 608(b).

[7]   Defendant's contention that the trial court should have dismissed the kidnapping charge at the close of all evidence is also without merit. The standard of review of a trial court's de-nial of defendant's motion to dismiss at the close of the State's evidence is:

> whether there is substantial evidence (1) of each essential ele-ment of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. *State v. Rose-man*, 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Mason*, 279 N.C. 435, 183 S.E. 2d 661 (1971).
>
> If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion

should be allowed. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967); *State v. Guffey*, 252 N.C. 60, 112 S.E. 2d 734 (1960).
. . .

. . . .

The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978); *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975).

*State v. Mercer*, 317 N.C. 87, 96, 343 S.E. 2d 885, 890-91 (1986) (quoting *State v. Powell*, 299 N.C. 95, 98-99, 261 S.E. 2d 114, 117 (1980) ).

Unlawful confinement or restraint is an element of the crime of kidnapping. N.C.G.S. § 14-39 (1986). Defendant contends that since the evidence is insufficient to show that he unlawfully confined or restrained Bishop Dickerson, the trial court should have dismissed the kidnapping charge. The evidence shows that after defendant had shot at Bishop Dickerson's car several times, he got into the car and slapped her twice, then the car pulled down a dirt road. We conclude that, viewed in the light most favorable to the State, there is evidence which permits a reasonable inference that defendant unlawfully confined the victim in her car.

[8] Defendant further contends that the trial court erred by not charging the jury on the defense of insanity. Where a defendant's evidence discloses facts which are legally sufficient to constitute a defense to the crime with which he or she has been charged, the court is required to instruct the jury as to the legal principles applicable to that defense. *State v. Mercer*, 275 N.C. 108, 116, 165 S.E. 2d 328, 334 (1968). We hold that the evidence presented at trial does not present facts legally sufficient to establish a defense of insanity. The legal test for insanity is

whether defendant, at the time of the alleged act, was laboring under such a defect of reason, from disease or deficiency

of the mind, as to be incapable of knowing the nature and quality of his act, or if he does know this, was by reason of such a defect of reason incapable of distinguishing between right and wrong in relation to such act.

*State v. Corley,* 310 N.C. 40, 53, 311 S.E. 2d 540, 548 (1984) (quoting *State v. Vickers,* 306 N.C. 90, 94, 291 S.E. 2d 599, 603 (1982) ); *see also State v. Jones,* 293 N.C. 413, 425, 238 S.E. 2d 482, 490 (1977). Defendant claims that evidence elicited on cross-examination of Ms. Strickland and Robert Bayman was sufficient to make out a defense of insanity. That evidence included testimony that defendant drove down the highway recklessly, that he woke his family up during the night to go "bird blinding," that he shot into the floor beside his wife a few times, that he beat his wife and children, and that he had a reputation in the community for being crazy. Although this evidence tends to show that defendant's behavior was often antisocial and unacceptable, it does not support defendant's argument that at the time he killed Bishop Dickerson he was incapable of knowing the nature and quality of his actions or of distinguishing between right and wrong in relation to these actions.

[9] Finally, defendant contends that the trial court erred in refusing to instruct the jury on voluntary intoxication as a defense to the first degree murder charge and in refusing to submit the possible verdict of second degree murder to the jury on the basis that voluntary intoxication negates the specific intent necessary for first degree murder. First, to support an instruction of voluntary intoxication,

> [t]he evidence must show that at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. *State v. Shelton,* 164 N.C. 513, 79 S.E. 883 (1913). In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon. *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975).

*State v. Medley,* 295 N.C. 75, 79, 243 S.E. 2d 374, 377 (1978). The evidence here showed only that defendant had had two drinks earlier in the evening. This evidence was insufficient to show that defendant was so intoxicated at the time of the crime that he was

incapable of forming the intent necessary for first degree murder. This Court has held that "when the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct on the lesser offense." *State v. Williams*, 314 N.C. 337, 351, 333 S.E. 2d 708, 718 (1985) (quoting *State v. Hardy*, 299 N.C. 445, 456, 263 S.E. 2d 711, 718-19 (1980)). Since the State's evidence clearly showed every element of first degree murder, and since defendant has not shown voluntary intoxication sufficient to negate specific intent, it follows that the trial court was not required to submit the possible verdict of second degree murder to the jury. The trial court thus did not err in refusing to instruct on voluntary intoxication and to submit the possible verdict of second degree murder to the jury. *See State v. Goodman*, 298 N.C. 1, 12-14, 257 S.E. 2d 569, 578-79 (1979).

For the reasons set forth, we find that the defendant received a fair trial, free from prejudicial error.

No error.