STATE OF NORTH CAROLINA v. TROY PEREASE HERRING

No. 44A94

(Filed 3 November 1994)

## 1. Homicide § 393 (NCI4th)— noncapital first-degree murder—intoxication—evidence insufficient

The trial court did not err in a noncapital first-degree murder prosecution by refusing to submit voluntary intoxication to the jury where defendant was able to testify regarding the details of the evening of the murder; he recalled who his companions were that evening; he was able to describe what he was wearing and he was certain of who fired the gun; he had the presence of mind to flee and remembered the getaway route; he remembered the make and model of the getaway car, the name of the gas station where they stopped, who hid the gun, and the time the shooting occurred; and a detective testified that defendant had no odor of alcohol when he made his statement five hours later. The evidence shows that defendant may have been intoxicated but does not show that he was utterly incapable of forming a deliberate and premeditated purpose to kill.

**Am Jur 2d, Homicide § 447.**

**Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

## 2. Homicide § 245 (NCI4th)— noncapital first-degree murder—premeditation and deliberation—circumstantial evidence—intoxication

Defendant in a noncapital first-degree murder prosecution was not entitled to an instruction on second-degree murder on the theory that his intoxication negated the elements of premeditation and deliberation and that the jury was free to disregard the evidence of premeditation and deliberation because it was entirely circumstantial. The trial court did not err by refusing to submit second-degree murder based on voluntary intoxication and the evidence, while circumstantial, tended to show that defendant was guilty either of first-degree murder or not guilty. There was no evidence tending to show that defendant shot and killed the victim with malice but without premeditation and deliberation.

STATE v. HERRING

[338 N.C. 271 (1994)]

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premedita-
tion from the circumstances attending the killing. 96
ALR2d 1435.**

3. **Criminal Law § 794 (NCI4th)— noncapital first-degree
murder—acting in concert—evidence sufficient**

The evidence presented at a noncapital first-degree murder
trial was sufficient to justify an acting in concert instruction
where, when referring to the sale of cocaine, defendant testified,
"Ain't nobody sold none separate; we was altogether"; defendant
testified that he and his associates searched for the man who
stole his cocaine and that "everybody was like, yeah" when some-
one offered to lead them; defendant claimed that Costa did the
shooting but conceded that he knew that Costa had a gun and
went with Costa and another willingly; defendant also conceded
that the three men approached the victim together; and there was
other testimony about the joint pursuit of the cocaine thief and
that there were three people, including defendant, around the vic-
tim when he was shot.

**Am Jur 2d, Trial §§ 1255 et seq.**

4. **Criminal Law § 724 (NCI4th)— noncapital first-
degree murder—expression of opinion by court on guilt—
inadvertent**

There was no prejudicial error in the instructions to the jury
in a noncapital first-degree murder trial where the court instruct-
ed the jury that "There is evidence which tends to show that the
defendant confessed and—that he committed the crime charged
in this case." The inadvertent addition of the word "and" did not
mislead the jury to believe that the trial court was expressing an
opinion as to defendant's guilt and it is clear from the instructions
as a whole that the jury was not misled.

**Am Jur 2d, Trial §§ 1195 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judg-
ment imposing a sentence of life imprisonment entered by Strickland,
J., at the 11 October 1993 Criminal Session of Superior Court, Pitt
County. Heard in the Supreme Court 12 October 1994.

STATE v. HERRING

[338 N.C. 271 (1994)]

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*Mark A. Ward for defendant-appellant.*

FRYE, Justice.

Defendant was indicted for the first-degree murder of Jerome Hopkins. He was tried noncapitally by a jury, found guilty as charged, and sentenced to a mandatory term of life imprisonment. Defendant appeals to this Court asserting four assignments of error. We find no reversible error.

The evidence presented at trial tended to show the following facts and circumstances. On 10 April 1992, defendant and three of his associates, Anthony Ellis, Tony Costa, and Demetrice Williams were selling crack cocaine in the Moyewood subdivision of Greenville. At approximately 11:30 p.m. that evening, a potential customer, Jerome Gorham, pretended to examine two "twenty size rocks" of cocaine and ran off with them. Defendant and his three associates searched for Gorham for thirty minutes to an hour, but were unable to locate him.

The following evening, defendant, Costa, and Ellis were standing on a corner, in Moyewood, drinking alcoholic beverages. At about 10:30 p.m., Willie Jones approached the three men and offered to lead them to Jerome Gorham. Jones led them to Mark Gorham and Jerome Hopkins. Jones mistakenly believed that Jerome Hopkins was Jerome Gorham. Ellis, Costa, and defendant approached Hopkins and Hopkins was shot and killed.

After the shooting, defendant, Ellis, and Costa went to a night-club. While at the club, they were able to secure a ride to Scotland Neck. They were apprehended by the police before they reached their destination.

An autopsy revealed that when the victim was shot the "gun was at light contact with the clothing surface of the body at the time of the discharge." The entry wound was on the left side of the chest by the armpit, and the bullet punctured Hopkins' lung, diaphragm, spleen, aorta, and liver.

Mark Gorham, Jerome Gorham's brother, testified that, when the three men approached Jerome Hopkins, one of them said "Is this the one?" Jerome Hopkins responded, "My name is not Jerome," as if he

was attempting to say "my name is not Jerome Gorham." According to Mark Gorham, defendant shot Jerome Hopkins at close range.

Demetrice Williams, who was charged with conspiring to murder Jerome Hopkins, testified that he was drinking with defendant, Costa, and Ellis the day of the shooting, but they were "not drinking to get drunk." Williams testified further that when he saw defendant after the shooting, defendant told him, "I had capped the M-F." Williams understood defendant to be referring to Jerome Hopkins.

Detective Best, an investigating officer for the Greenville Police Department, was called as a witness for the State. Detective Best and his colleague, Detective Thomas Ne'Velle, interviewed several witnesses. Detective Best testified that he was sitting close to defendant during the interrogation and he smelled "no alcohol" and "no body odor." Best testified that defendant was coherent and appeared to know what he was doing.

Detective Best further testified that he read the *Miranda* warnings to defendant and defendant signed an acknowledgement in the presence of Detectives Best and Ne'Velle. Detective Best testified that defendant made a written statement in his own handwriting and gave an oral statement as well. Best read the following handwritten statement into the record:

4-12-92. On April 10, 1992, some guy I know had some drugs tooken from him by a guy named Jerome. So they chased him, but couldn't find him. So on April 11th, 1992, at about 10:45 p.m., a friend named Willie came and told us he knew where Jerome was and bring us to him and that's when I shot him. Troy P. Herring 4-12-92.

Testifying on his own behalf, defendant stated that he and his four associates sold cocaine together. Defendant's testimony indicated that the day before the murder, 10 April 1992, he consumed between forty and sixty ounces of a fortified wine named "Sisco," which is also known as "liquid crack." He also drank four cans of a malt liquor beer, known as "Bull," and smoked marijuana. Defendant testified that on the day of the murder he began drinking and smoking around two o'clock in the afternoon; he drank another forty ounces of "Sisco," four twelve-ounce malt liquor beers, and smoked three "marijuana joints." Defendant further testified that he was "messed up," he "wasn't sober," that he was "drunk," and that his state of intoxication continued up until the time of the shooting.

Defendant thought Costa, Ellis, and Jones shared his intentions to get either his money or his drugs back from Jerome Gorham. According to defendant, it was Costa who shot the victim. Defendant indicated he did not remember giving a statement to Detective Best because his intoxication rendered him impaired.

Defendant also called Tony Costa, Anthony Ellis, and Detective Best as witnesses. Both Costa and Ellis refused to answer the majority of defendant's questions and invoked their Fifth Amendment rights. Detective Best read into evidence a statement taken from Ellis on 12 April 1992. Ellis' statement to Detective Best corroborated defendant's statement that he had been drinking "Sisco" and beer the night of the shooting.

The jury was given the choice of finding defendant guilty of first-degree murder or not guilty. The jury returned a verdict of guilty of first-degree murder.

[1] In his first assignment of error, defendant contends that the trial court committed reversible error by failing to instruct the jury on voluntary intoxication as a defense to first-degree murder. We disagree.

Defendant contends that he became intoxicated after consuming large amounts of alcohol and smoking marijuana in the forty-eight hour period preceding the shooting. Defendant further argues that his inability to remember giving a statement to the police is evidence of his intoxication at the time of the shooting. Additionally, defendant contends that his attempts to elicit testimony regarding his intoxication from his witnesses were thwarted by the witnesses' invocation of the Fifth Amendment.

A defendant who wants to raise the issue of whether he was so intoxicated by the voluntary consumption of alcohol or other drugs "that he did not form a deliberate and premeditated intent to kill has the burden of producing evidence, or relying on the evidence produced by the state, of his intoxication." *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). "Evidence of mere intoxication" does not meet this burden. *Id.* The defendant "must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form a deliberate and premeditated intent to kill." *Id.* The evidence on which the defendant relies

must show that at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditat-

ed purpose to kill. *State v. Shelton*, 164 N.C. 513, 79 S.E. 883 (1913). In absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon. *State v. McLaughlin*, 286 N.C. 597, 213 S.E.2d 238 (1975).

*Mash*, 323 N.C. at 346, 372 S.E.2d at 536 (quoting *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987)).

In *State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979), this Court rejected the defendant's claim that the trial court erred in not giving an instruction on voluntary intoxication. In reaching its decision, the *Goodman* Court relied on evidence which showed that the defendant could drive, give directions, lead a search, and participate "in planning a scheme for disposing of the victim's body." *Id.* at 14, 257 S.E.2d at 579.

The evidence in this case is analogous to that in *Goodman*; it disclosed a defendant with a detailed memory, a defendant in control of his actions. Defendant was able to testify regarding the details of the evening of the murder. Defendant recalled who his companions were that evening. He was able to describe what he was wearing and he was certain Costa fired the gun. Defendant had the presence of mind to flee the scene and remembered the getaway route. He remembered the make and model of the getaway car, the name of the gas station where they stopped, who hid the gun, and the time the shooting occurred. Detective Best testified that defendant had no odor of alcohol when he made his statement five hours later.

Viewing the evidence in the light most favorable to defendant, the evidence shows that defendant may have been intoxicated but the evidence does not show defendant was "utterly incapable of forming a deliberate and premeditated purpose to kill." *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987). For this reason we reject defendant's first assignment of error and hold that the trial court did not err in refusing to submit a voluntary intoxication charge to the jury.

[2] Defendant's second assignment of error is related to his first. Defendant contends that the trial court erred by failing to submit, as an alternative verdict, second-degree murder on the theory that defendant's intoxication negated the elements of premeditation and deliberation. Defendant also argues that because the evidence of premeditation and deliberation was entirely circumstantial, the jury was at liberty to disregard it; therefore, the jury should have been given

the opportunity to consider second-degree murder as a lesser-included offense of first-degree murder.

We find no merit in defendant's contention that the jury could have disregarded the evidence of premeditation and deliberation because it was circumstantial. This Court has often acknowledged "that it is difficult to prove premeditation and deliberation and that these factors are usually proven by circumstantial evidence because they are mental processes that are not readily susceptible to proof by direct evidence." *State v. Thomas*, 332 N.C. 544, 556, 423 S.E.2d 75, 82 (1992). "The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence." *State v. Adcock*, 310 N.C. 1, 36, 310 S.E.2d 587, 607 (1984).

For the reasons stated in conjunction with defendant's first assignment of error, we conclude that the trial court did not err by refusing to submit second-degree murder based on voluntary intoxication. "Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). The absence of premeditation and deliberation distinguishes second-degree murder from first-degree murder. *State v. Cummings*, 326 N.C. 298, 316, 389 S.E.2d 66, 76 (1990).

In this case the evidence, while circumstantial, tended to show that defendant was guilty of either first-degree murder or not guilty. Some of the evidence supporting first-degree murder included: (1) Demetrice Williams' testimony that on 11 April 1992, the day of the shooting, defendant "kept saying when I find him [the man defendant believed had stolen his cocaine] I am going to do something to him." (2) Two detectives testified that when they informed defendant that he shot the wrong "Jerome," defendant responded, "He said his name was Jerome. He probably needed killing anyway." There was no evidence tending to show that defendant shot and killed the victim with malice, but without premeditation and deliberation; therefore, defendant was not entitled to an instruction on second-degree murder.

[3] For his third assignment of error, defendant contends the trial court committed reversible error by instructing the jury on acting in concert. Defendant argues that while the evidence shows that Costa, Jones, and Ellis were with defendant before and after the shooting, it does not show that anyone other than defendant did any act consti-

tuting first-degree murder. Therefore, none of the actions of Costa, Jones, and Ellis should be attributable to defendant under a theory of acting in concert.

In support of his argument, defendant directs this Court to the following question, which was asked by the jury: "If he [defendant] conspired is he guilty of murder whether or not he pulled the trigger?" Defendant contends that this question makes it clear that the jury was speculating upon a theory of guilt not supported by the evidence, and the jury could have convicted defendant on a theory that someone other than defendant committed the murder. We reject defendant's argument.

Defendant's testimony, and the testimony of other witnesses, support the acting in concert instruction. When referring to the sale of cocaine defendant testified: "Ain't nobody sold none separate; we was altogether [sic]." Defendant testified that he and his associates searched for the man who stole his cocaine and when Willie Jones offered to lead defendant, Costa, and Ellis to Jerome "everybody was like, yeah." Although defendant claimed Costa actually did the shooting, he conceded that he knew Costa had a gun and he went with Ellis and Costa willingly. Additionally, defendant conceded that the three men together approached the victim.

Furthermore, there was testimony from Demetrice Williams about the joint pursuit of Jerome Gorham on the night before the shooting. Mark Gorham testified that, while he "never saw the pistol," there were three people, including defendant, around the victim when he was shot.

The evidence presented at trial was sufficient to justify an acting in concert instruction. Accordingly we reject defendant's argument and find no error.

[4] As his final assignment of error, defendant contends the trial court expressed an improper and prejudicial opinion as to defendant's guilt. Defendant objects to the inclusion of the word "and" in the first sentence of the following instruction:

There is evidence which tends to show that the defendant confessed and—that he committed the crime charged in this case. If you find that the defendant made that confession, then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

Defendant argues that the instruction implied to the jury that the court believed the evidence showed defendant was guilty. We disagree.

In *State v. Young*, 324 N.C. 489, 380 S.E.2d 94 (1988), the defendant was convicted of first-degree murder after a trial that included evidence of his confession. In rejecting defendant's argument that a similar instruction, without the word "and" in the first sentence, constituted an expression of opinion by the trial court, we said:

> The use of the words "tending to show" or "tends to show" in reviewing the evidence does not constitute an expression of the trial court's opinion on the evidence. *State v. Allen*, 301 N.C. 489, 272 S.E.2d 116 (1980); *State v. Huggins*, 269 N.C. 752, 153 S.E.2d 475 (1967). Nor did the trial court's statement that the evidence tended to show that the defendant had "confessed" that he "committed the crime charged" amount to an expression of opinion by the trial court, *because* evidence had been introduced which in fact tended to show that the defendant had confessed and to the *crime charged*, first degree murder.

*State v. Young*, 324 N.C. at 495, 380 S.E.2d at 98.

We are convinced the inadvertent addition of the word "and" did not mislead the jury to believe that the trial court was expressing an opinion as to defendant's guilt. We have held "a mere slip of the tongue by the trial judge in his charge to the jury . . . will not constitute prejudicial error when it is apparent from the record that the jury was not misled thereby." *State v. Simpson*, 303 N.C. 439, 450, 279 S.E.2d 542, 549 (1981). It is clear from the instructions as a whole that the jury was not misled. Accordingly, we find no prejudicial error in the instructions.

Defendant received a fair trial, free of prejudicial error.

NO ERROR.